No. 89-145

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

BURK RANCHES, INC., A Montana corp.,
           Plaintiff and Respondent,
    -vs-
STATE OF MONTANA and STATE OF MONTANA
FOR STATE FISH AND GAME COMMISSION,
           Defendants and Third-Party Plaintiffs
           and Appellants,
    -vs-
JOHN W. RIEBER, JR., GUY HOLT, MACK POOLE
and LARRY BRADLEY,
           Third-Party Defendants and Respondents.
    and
JOHN W. RIEBER, MICHELE RIEBER and RIEBER RANCH,
A Montana corp.,
           Plaintiffs and Respondents,
    -vs-
STATE OF MONTANA; and DEPARTMENT OF FISH, WILDLIFE
AND PARKS,
           Defendants, Third-Party Plaintiffs and
           Appellants,
    -vs-
GUY HOLT, MACK POOLE, and LARRY BRADLEY,
           Third-Party Defendants and Respondents.

APPEAL FROM:  District Court of the Fifth Judicial District,
             In and for the County of Beaverhead,
             The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant(s):

        R. Scott Currey, Agency Legal Services, Helena,
        Montana

    For Respondent(s):

        Donald Robinson; Poore, Roth & Robinson, Butte,
        Montana
        Steve Reida; Landoe, Brown, Planalp & Kommers,
        Bozeman, Montana

Submitted: October 17, 1989

Decided: March 9, 1990

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

The State of Montana appeals from a negligence action in the District Court of the Fifth Judicial District, Beaverhead County, arising out of the collapse of the Brownes Lake Dam. The District Court held all parties liable as a matter of law, and the jury apportioned 100% of the liability to the State and awarded actual and future damages to downstream ranchers.

We reverse and remand.

## ISSUES

The State of Montana raises the following issues on appeal:

1. Whether the District Court erred in not dismissing plaintiff Rieber's claim for future damages resulting from his loss of irrigation capacity.

2. Whether in apportioning no negligence to the plaintiff and third-party defendants the jury disregarded the District Court's instructions that all parties were liable.

3. Whether the jury's award of future damages to the plaintiff for lost hay crops, decreased capital value, and increased pasture expenses was excessive as triple compensation for the same injury.

## FACTS

Sometime prior to 1894, Joseph Browne constructed the Brownes Lake Dam on his patented mining claim near Glenn, Montana. Designed to store irrigation water from Rock Creek, the dam raised

1

the natural level of Brownes Lake by eight feet. In 1923, the Beaverhead County District Court apportioned the water rights to Rock Creek and enjoined all parties and successors owning ditch, water, or reservoir rights, or any interest therein, from interfering with the irrigation system. Wood Livestock Co. v. Jensen (5th D. Mont. April 25, 1923).

In 1963 the State of Montana purchased the lake and surrounding land as a recreational site under the control of the State Fish and Game Commission (presently known as the Department of Fish, Wildlife and Parks). The State has filed an as yet unadjudicated claim to a nonconsumptive, recreational, water right. Other water rights holders include John W. Rieber, Guy Holt, Mack Poole, and Larry Bradley [hereinafter water users], the present successors in interest to the parties subject to the 1923 decree. During the State's ownership of the dam, the water users maintained exclusive control of the headgate on Brownes Lake Dam regulating water flow to irrigate their ranches.

Both the State and the water users were aware that the dam was unstable. The State first noted that the dam was old and seeping water in May of 1976. In 1979, the United States Forest Service and the Montana Department of Natural Resources and Conservation inspected the dam and informed the State that it was hazardous. The Forest Service felt that its deteriorating condition could lead to a collapse which would damage public and private land and

2

## RIEBER'S FUTURE DAMAGES

The parties stipulated that Rieber's past special damages totaled $8,998 and the jury found $55,000 in general damages and $155,480 in future special damages. The State contests only the latter award which included damages for decreased capital value, thirty years of loss of hay crops, ten years of increased irrigation labor costs, and thirty years of increased pasturage expenses, all resulting from Rieber's lost irrigation capacity.

The State argues that, although there is no on-point Montana law, the majority of jurisdictions hold that a landowner has no duty to maintain an artificial impoundment for the benefit of other water users absent a statute or covenant to the contrary. See A. Tarlock, Law of Water Rights and Resources, § 3.08(1)-(3) (1989). The State also argues that it was not a successor to water rights created by the 1923 apportionment and, therefore, was not enjoined by the 1923 decree from destroying the dam, or allowing its destruction. Since the State had no duty to maintain the dam for irrigation purposes, it asserts that it is not liable for damages arising from Rieber's lost irrigation capacity.

Who is liable for the maintenance of artificial impoundments is an important question that will undoubtedly arise again as Montana's reservoirs continue to age. That, however, is not the present question. The State's argument attempts to correlate specific types of duties with liability for specific types of

4

possibly cause loss of life. In the winter of 1979-80 the State met with some of the water users informing them of the condition of the dam. The State told the water users that they could either take responsibility for maintaining the dam or the State would breach it the following spring. No action was taken by either party. In April of 1981, the Army Corps of Engineers again informed the State that inspection showed the dam to be in poor condition. Three years later, the dam collapsed damaging the property of downstream ranchers and eliminating the storage system.

Burk Ranches, Inc., which did not use the irrigation system, filed suit against the State for damage caused by the dam's outwash. Water user Rieber filed against the State for outwash damage and loss of irrigation capacity. In both cases the State joined the nonparty water users as third-party defendants. The State settled with Burk Ranches for $134,000, but retained its action for contribution against the water users.

Prior to trial, the State admitted liability and the District Court entered summary judgment holding the State and water users jointly and severally liable because they both had a duty to maintain the dam. The court joined the two actions for trial in which the jury was to determine Rieber's damages and to apportion damages between the State and the water users. The jury returned a verdict of $219,478 for Rieber and found the State 100% liable. The State now appeals both decisions.

damages. The State asserts that it is not liable for loss of irrigation since it had no duty to maintain the dam for irrigation purposes. While this duties-and-damages correlation had meager support at one time, it has been uniformly rejected in modern tort law. W. Keeton, Prosser and Keeton on Torts, § 43 at 289-90 (5th ed. 1984); Restatement (Second) of Torts § 281, comment j (1965).

Montana law provides that tortfeasors are liable for all damages caused in fact and proximately caused by their negligence, § 27-1-317, MCA, including reasonably certain future damages, § 27-1-203, MCA. The State admitted liability for the collapse of the dam apparently relying on a landowner's duty to warn about, and make safe, hazardous conditions. See Restatement (Second) of Torts §§ 364, 370 (1965). As the State itself argues, a finding of liability includes causation-in-fact and proximate causation. The State, therefore, is liable for Rieber's reasonably certain future damages as determined by the jury's apportionment of negligence, see § 27-1-703, MCA, regardless of what type of duty it owed. The future damages awarded by the jury, however, were not reasonably certain and did not comply with the appropriate measure of damages.

Although no single measure of damages can serve in every case to adequately compensate an injured party, the general rule in Montana is that the measure of damages for permanent injuries to real property is the difference between the value of the property

5

before and after the injury.[1] Watson v. Colusa-Parrot Mining & Smelting Co. (1905), 31 Mont. 513, 518, 79 P. 14, 15; see also Kebschull v. Nott (1986), 220 Mont. 64, 67, 714 P.2d 993, 995. This measure of damages avoids problems of double and speculative damages as is amply illustrated by Rieber's award of damages for both lost irrigation and decreased capital value.

Earl Love gave most of the damages evidence. As the former district conservationist for the Dillon Soil Conservation Service, Love was familiar with the Rieber ranching operation before the dam collapsed. After the collapse he was hired to monitor and analyze the impact of the lost irrigation capacity on the Rieber ranch. He gave the jury his opinion of the ranch's decreased capital value based on lost hay production, lost aftermath grazing, and increased pasturage fees.

Love's opinion demonstrates that the award constitutes double damages for the same injury. When the landholder recovers damages based on the decreased value of ranch and farm property, damages for lost crops constitute double damages and are not recoverable. Wheatland Irrigation Dist. v. McGuire (Wyo. 1977), 562 P.2d 287, 298; Manning v. Woodlawn Cemetery Corp. (Mass. 1921), 131 N.E. 287, 288; Kugel v. Village of Brookfield (Ill. App. 1944), 54 N.E.2d 92, 96. Love's valuation of the property after injury necessarily took

---

[1]This is also the universal rule in other jurisdictions. See 22 Am.Jur.2d, Damages § 405 at n.19 (1988).

into account the inability of the land to produce at pre-injury levels. Loss of use is an appropriate factor to be considered in determining decreased value; it is not a separately compensable item of damages.

The evidence also demonstrates that the damages failed to satisfy the statutory requirement of reasonable certainty. See § 27-1-203, MCA. The damages for thirty years of lost hay crops and for thirty years increased pasturage expenses were excessively speculative. Love testified that he chose the thirty-year period on the assumption that the thirty-five-year-old Rieber would retire at age sixty-five. He correctly noted that the losses would actually go on forever.

Permanent injuries to real property generate damages which extend indefinitely into the future defying formulation of any reasonably certain basis for evaluation. Claiming future damages for only a specified number of years provides only a cosmetic solution to the problem. The record does not indicate that Rieber's hay crops and pasturage will return to pre-injury levels on the thirty-first year after the collapse of the Brownes Lake Dam. They may be restored at an earlier date, or they may never be restored. Even if Rieber retires at age sixty-five, the injury will probably continue in his successor.

Love's testimony on the ranch's decreased capital value also produced excessively speculative damages. We have held in a number

of cases that the jury may base future damages on expert testimony which necessarily includes some degree of conjecture and speculation. Stark v. Circle K Corp. (1988), 230 Mont. 468, 478, 751 P.2d 162, 168; Graham v. Clarks Fork Nat'l Bank (Mont. 1981), 631 P.2d 718, 720, 38 St.Rep. 1140, 1143; Frisnegger v. Gibson (1979), 183 Mont. 57, 71, 598 P.2d 574, 582. However, we have also consistently reiterated the statutory requirement that future damages must be reasonably certain. This imperative requires the parties to lay before the jury the most reliable type of evidence available for the particular type of injury. With some types of injury, some conjecture and speculation is unavoidable. Uncertainty, however, can be minimized in evidence of property damages. In the case of permanent injuries to real property, evidence based on the appraised value of the property before and after the injury, or an equally reliable method of valuation, ensures reasonable certainty.

Whether an injury is permanent or temporary is a question for the jury. Rempfer v. Deerfield Packing Corp. (N.J. 1950), 72 A.2d 204, 209; Benton Gravel Co. v. Wright (Ark. 1943), 175 S.W.2d 208, 210. In distinguishing between permanent and temporary injuries,

> [a] permanent injury to real property . . . is one of such a character and existing under such circumstances that it will be presumed to continue indefinitely. A temporary or continuing injury is one that may be abated or discontinued at any time, either by the act of the wrongdoer, or by the injured party.

Worden v. Bielenberg (Minn. 1912), 138 N.W. 314, 315; see also Gross v. Connecticut Mut. Life Ins. Co. (S.D. 1985), 361 N.W.2d 259, 272.[2]

The ability to repair the injury must, however, be more than a theoretical possibility; it must be an actual possibility within reasonable capabilities of the parties. Even though repair is theoretically possible, if the cost of repair greatly exceeds the decreased value of the property, the injury is presumptively permanent[3] and the decreased value rule applies. United States Steel Corp. v. Benefield (Fla. App. 1977), 352 So.2d 892, 894, cert. den. (Fla.) 364 So.2d 881; see also Kebschull, 220 Mont. at 66, 714 P.2d at 994. To hold otherwise would allow repair and replacement damages which might far exceed any benefit regained. As in this case, the cost of replacing and maintaining Brownes Lake Dam may well exceed the reasonable cost of lost crops and pasturage for the foreseeable future. It may even exceed the value of the ranch itself. The disparity would encourage the injured party to

---

[2]"Permanent injury" has at least two meanings. In the present context it refers to whether the injury can be repaired. In the context of the statute of limitations, "permanent injury" refers to whether the injury has stabilized enough that the extent of the damage has become reasonably certain. Haugen Trust v. Warner (1983), 204 Mont. 508, 513, 665 P.2d 1132, 1135. Use of the term in the present discussion does not alter its definition under the statute of limitations.

[3]The presumption of permanence is only a presumption. It can be overcome by statutory and common laws, such as environmental laws, which compel repair or replacement.

9

forego actual repairs and reap a windfall profit contrary to the purpose of compensatory damages.

> The injured party is to be made as nearly whole as possible--but not to realize a profit. Compensatory damages are designed to compensate the injured party for actual loss or injury--no more, no less.

Spackman v. Ralph M. Parsons Co. (1966), 147 Mont. 500, 506, 414 P.2d 918, 921.

In summary, the measure of damages for permanent injury to real property is the difference between the appraised value of the property before and after the injury. An injury is permanent if it will continue indefinitely. An injury is presumptively permanent when the cost of repair greatly exceeds the property's decreased value. If the injury is temporary, the measure of damages is the cost of repair plus damages for loss of use up to the time when the injury reasonably could have been repaired. Bos v. Dolajak (1975), 167 Mont. 1, 10, 534 P.2d 1258, 1262.

APPORTIONMENT OF LIABILITY

The State argues that by apportioning negligence at 100% for the State and 0% for Rieber and the other water users, the jury ignored the District Court's instruction that all parties were liable. We agree that the jury ignored the instruction, but not because it found the State responsible for all damages. The jury understandably disregarded the liability instruction because it

received conflicting instructions requiring it to also find legal causation.

Prior to trial, the District Court entered summary judgment holding the State and water users jointly and severally liable.

> The STATE has admitted liability. It now claims that the water users are jointly and severally liable. With this position, the Court agrees; and finds that there are no genuine issues of fact which would or could result in a contrary finding. The water users are jointly liable. Damages, if any, should be properly apportioned between the joint tortfeasors, commensurate with the degree of their respective negligence.

Order and Findings of the District Court, March 18, 1988.

The District Court appropriately instructed the jury on its finding of liability and the issues remaining for determination. However, the court also inconsistently instructed the jury on legal causation.

> You are instructed that the doctrine of "comparative negligence" is applicable to this case. Further, you are advised that the State has admitted liability and that the Court has previously adjudged that all other parties, including Rieber's [sic], are jointly and severally liable to the extent of their respective and apportioned negligence. You must determine the degree of each party's negligence and assess him the percentage of negligence contributing <u>as a legal cause to the damages</u> and enter the percentage on the appropriate line next to that party's name on the verdict form.

Jury Instruction No. 12. (Emphasis added.)

> Before you can apportion liability as to any party, you must find that parties' [sic] negligence was a legal cause to some percentage of the damages.

Jury Instruction No. 20.

> A legal cause of an injury is a cause which is a substantial factor in bringing about the injury.

Jury Instruction No. 11.

The verdict form contained the same inappropriate instruction.

> We further find that the damages herein assessed are apportioned in accordance with what we find to be the comparative negligence <u>proximately causing</u> said damages as follows . . . .

Jury Verdict Form.  (Emphasis added.)

A finding of liability includes a finding of every element necessary to establish liability except those specifically reserved by the judgment.  In negligence, the essential elements of liability include duty, breach, cause-in-fact, proximate cause, and damages.  Thornock v. State (1987), 229 Mont. 67, 72, 745 P.2d 324, 327.  Here, the summary judgment reserved only the amount and apportionment of damages for the jury, but the court instructed the jury that it had to find causation.  We recognize that cause cannot be split from effect; the cause of the damage and the amount of the damage caused, are, in reality, different facets of the same concept.  However, by giving instructions on causation, the court directed the jury to redetermine an issue already decided on

12

summary judgment. The court should have made the jury's duty less ambiguous by instructing on the finding of liability and the meaning of that finding; both parties had a duty to maintain the dam, both breached their duty, and both were the actual and legal causes of any resulting damages.

The jury's apportionment of 100% of the damages to the State and 0% to the other parties is not an error per se. The apportionment of liability is a duty reserved solely for the jury. Section 27-1-703(4), MCA. It is well within the authority of the trier of fact to find that a defendant had a duty, breached it, and caused injury to the plaintiff, and yet award no compensation when the plaintiff failed to adequately prove damages. See Lenz Constr. Co. v. Cameron (1984), 207 Mont. 506, 511-12, 674 P.2d 1101, 1104. That possibility, however, is difficult to envision when the court found on summary judgment that both had breached their concomitant duty to maintain the dam.

## CONCLUSION

The damages awarded in Rieber v. State of Montana were based on an inappropriate measure of damages, speculative, and included double compensation for the same injury. In apportioning the percentage of negligence to the parties the jury relied on improper instructions and inappropriately redecided the issue of causation. We therefore reverse Rieber v. State of Montana, Cause No. 10612, on the amount and apportionment of damages, including apportionment

13

on the State's contribution claim against the third-party defendants. The case is remanded to the District Court for further proceedings consistent with this opinion.

We also reverse and remand the District Court's summary judgment on the State's contribution claim in Burk Ranches v. State of Montana, Cause No. 10348. In that case, the State settled with the plaintiff for $134,000 but retained an action for contribution against the third-party defendant water users. The percentage of the water users' negligence in the collapse of the dam, and therefore the percentage of their contribution in Burk Ranches, became res judicata on the jury's apportionment of damages in Rieber v. State. Following the Rieber jury's 0% apportionment to the water users, the District Court entered summary judgment in favor of the water users on the State's contribution claim in Burk Ranches. Because the Rieber jury was improperly instructed on the apportionment of damages, we hold that the summary judgment in Burk Ranches v. State was also an error of law. The State's $134,000 settlement with plaintiff Burk Ranches stands.

Chief Justice

14

We concur:

_John Conway Harrison_

_John C. Shelby_

_Dave T. Barr_

_R. C. McDonough_

_William E. Hunt_

_____
Justices