No. 96-049

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

WILLIAM J. SEBENA, d/b/a LEWIS AND
CLARK MOTEL OF BOZEMAN, MONTANA,

      Plaintiff and Appellant,

  v.

AMERICAN AUTOMOBILE ASSOCIATION
and AAA MONTANA,

      Defendants and Respondents.

FILED

DEC 19 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Kevin E. Vainio, Butte, Montana

    For Respondent:

        Barry G. O'Connell, Bozeman, Montana

Submitted on Briefs:  September 12, 1996

Decided:  December 19, 1996

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

William J. Sebena, d/b/a Lewis and Clark Motel of Bozeman, Montana, appeals a judgment of the First Judicial District Court, Lewis and Clark County. That court rejected Sebena's claim that the American Automobile Association (AAA) and AAA Montana intentionally interfered with the Lewis and Clark Motel's prospective business advantage by delisting the motel from the AAA travel directory. We affirm.

The following issues are dispositive of this appeal:

1. Whether the District Court erred in denying Sebena a jury trial.

2. Whether the court erred in ruling that Sebena failed to prove damages.

AAA is a nonprofit Connecticut corporation which maintains its principal place of business in Heathrow, Florida. There are approximately 36,000,000 AAA members. AAA publishes regional TourBooks which provide information for its members on attractions, lodging, and restaurants in various regions of the United States. AAA Montana, a nonprofit Montana corporation and a member club of AAA, maintains its principal place of business in Helena, Montana.

To be listed in a TourBook, an establishment must undergo an annual inspection and meet certain minimum standards. AAA ranks the motels listed in its TourBooks with one to five diamonds, in ascending order of quality.

Beginning in 1978, the Lewis and Clark Motel was listed in AAA's annual TourBook for Montana, Idaho, and Wyoming. Until 1994,

2

it was listed as a three- or four-diamond establishment. However, beginning in 1987, AAA's annual inspectors noted deficiencies from AAA requirements in the Lewis and Clark Motel. Each year, Sebena was directed to correct these deficiencies to maintain the motel's rating.

In March 1993, AAA advised Sebena that, based upon its most recent inspection, it would not list the Lewis and Clark Motel in its 1994 TourBook. Sebena subsequently brought this action, alleging that the defendants wrongfully and intentionally interfered with the motel's business relationships with traveling members of AAA and with the motel's expectancy of future economic benefit.

After a two-day nonjury trial, the court issued findings, conclusions, and judgment for the defendants. Sebena appeals.

## ISSUE 1

Did the District Court err in denying Sebena a jury trial?

Sebena did not include a demand for jury trial in his complaint. He served his demand for jury trial as a separate document on June 16, 1994. The court granted the defendants' motion to strike the demand for jury trial on the basis that the demand was untimely.

Rule 38(b), M.R.Civ.P., states:

Any party may demand a trial by jury . . . by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading[.] [Emphasis added.]

Sebena's summons and complaint were served upon AAA on April 18, 1994. AAA and AAA Montana served a joint answer to the complaint on May 26. Thereafter, on May 31, AAA Montana was served with the summons and complaint.

The District Court ruled that Sebena's June 16 demand for jury trial was untimely based upon its determination that the defendants' joint answer served on May 26 was the last pleading served for purposes of Rule 38(b). Sebena argues that the last pleading served was, instead, the copy of the complaint served upon AAA Montana on May 31, with return of service filed on June 2. He maintains that with three additional days for service by mail pursuant to Rule 6(e), M.R.Civ.P., and excluding weekends pursuant to Rule 6(a), M.R.Civ.P., his time for filing a demand for jury trial did not expire until June 21, 1994.

Citing Matter of Texas General Petroleum Corp. (5th Cir. 1995), 52 F.3d 1330, Sebena concedes that in the "usual" case, service of the last pleading would be the service of the answer or a reply to a counterclaim. The pleadings in this action consist of the complaint and the answer. See Rule 7(a), M.R.Civ.P.

The May 26 answer to Sebena's complaint clearly stated that it was filed by "the Defendants, American Automobile Association and AAA Montana." When this joint answer was filed, the District Court was vested with jurisdiction over both defendants, because "[j]urisdiction may be acquired by our courts over any person through service of process as herein provided; or by the voluntary appearance in an action by any person either personally, or through

4

an attorney[.]" Rule 4B(2), M.R.Civ.P. Service of the complaint upon AAA Montana after AAA Montana had already filed its answer to the complaint was thus superfluous for jurisdictional purposes.

We conclude that when the joint answer was served on May 26, 1994, the last pleading had been served for purposes of Rule 38(b), M.R.Civ.P. Allowing three additional days for mailing and excluding weekends, a timely demand for jury trial should have been filed by June 10, 1994. See Detienne Associates v. Montana Rail Link (1993), 261 Mont. 238, 862 P.2d 1106.

Sebena's counsel admits that he overlooked the fact that the May 26 answer was a joint answer by both defendants. He argues, however, that even if his demand for jury trial was late, the District Court abused its discretion in denying him a jury trial as allowed under Rule 39(b), M.R.Civ.P. Under that Rule, a court may order a jury trial notwithstanding the parties' failure to timely demand one.

Because there is no Montana case on point, we look to cases decided under the corresponding federal rule of civil procedure, after which Rule 39(b), M.R.Civ.P., was patterned. The inadequacy of attorney oversight in failing to timely demand a jury trial as a reason for ordering a jury trial under Rule 39(b) has been clearly established in the federal courts.

> It is clear in the Ninth Circuit that a district court does not abuse its discretion in denying a request for a jury trial under Rule 39(b) when the only excuse for the failure to timely file a demand is oversight, inadvertence, neglect, or counsel's unfamiliarity with federal practice and procedure. . . . Indeed, Ninth Circuit authority suggests that the district judge may

5

actually abuse his discretion by granting relief in these circumstances.

Robertson v. Equitable Life Assur. Soc. of U.S. (D.C. Cal. 1987), 661 F.Supp. 416, 424-25, aff'd, 869 F.2d 1498 (1989).

We hold that the District Court did not err in ruling that the time for demanding a jury trial pursuant to Rule 38(b), M.R.Civ.P., began to run upon the service of the defendants' joint answer to Sebena's complaint and expired before Sebena filed his demand for jury trial. We further hold that the District Court did not abuse its discretion by declining to order a jury trial under Rule 39(b), M.R.Civ.P.

ISSUE 2

Did the court err in ruling that Sebena failed to prove damages?

To establish a case of intentional interference with prospective business advantage, a plaintiff must show acts which (1) were intentional and willful; (2) were calculated to cause damage to the plaintiff's business; (3) were done with unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; and (4) resulted in actual damages or loss. State Med. Oxygen v. Amer. Med. Oxygen (1988), 230 Mont. 456, 462, 750 P.2d 1085, 1088-89. Damages must be proven by substantial evidence which is not the product of mere guess or speculation. Lenz Const. Co. v. Cameron (1984), 207 Mont. 506, 511, 674 P.2d 1101, 1103.

Sebena argued that the defendants' failure to list his motel in the TourBook cost him guests and, therefore, money. His

6

evidence of damages consisted of his statement that the motel had a loss of 1,065 room rentals between 1993, the last year the motel was listed in the TourBook, and 1994, the first year it was not listed. He multiplied that number by a nightly room rental rate of $48.36 to arrive at a figure of $51,503.40 for his 1994 revenue loss from delisting.

During cross-examination, Sebena and his daughter, the motel's general manager, both admitted that they maintained no records showing the number of room rentals generated through AAA. Sebena's daughter also admitted that additional motels built in Bozeman might have had an impact on the business of the Lewis and Clark Motel. Sebena's accountant similarly testified that he did not have any records on the percentage of the motel's business attributable to the AAA listing. The accountant further attested on cross-examination that no significant capital improvements had been made to the Lewis and Clark Motel between 1989 and 1993.

In short, Sebena offered no concrete information on the percentage of his motel business which was attributable to the AAA listing. Nor did he offer expert testimony specifying the portion of loss of business, if any, which was attributable to delisting by AAA, or the portion of the claimed lost revenue representing lost profits.

This Court has set forth the following rules pertaining to the recovery of lost profits:

> Damages for loss of profits may be awarded if not speculative. The rule that prohibits speculative profits does not apply to uncertainty as to the amount of such profits but to uncertainty or speculation as to whether

7

the loss of profits is the result of the wrong and whether such profit would have been derived at all. Once liability is shown, that is the certainty that the damages are caused by the breach, then loss of profits on a reasonable basis for computation and the best evidence available under the circumstances will support a reasonably close estimate of the loss by a District Court. But no damages are recoverable which are not clearly ascertainable both in nature and origin, and only profits which are reasonably certain may be awarded.

Stensvad v. Miners & Merchants Bank, Etc. (1982), 196 Mont. 193, 206, 640 P.2d 1303, 1310 (citations omitted).

The District Court concluded that Sebena failed to show that he suffered any damages, based on the absence of records regarding the portion of the motel's business related to AAA and the absence of analysis by the accountant of lost profits relating to the delisting. We agree with the conclusion of the District Court.

Sebena has also raised two other issues on appeal. One of them concerned the court's refusal to admit into evidence guests' comment cards about the motel, which he offered as evidence that delisting his motel was unjustified. The other issue Sebena raised was whether the court should have addressed a breach of contract claim which he asserted. Any claim for breach of contract, like the claim of intentional interference with prospective business advantage, would have required nonspeculative proof of damages. See Bolz v. Myers (1982), 200 Mont. 286, 300-01, 651 P.2d 606, 613-14. Given our holdings on the issues discussed above, we conclude that we need not further address these other two issues.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
                Justices

9

Justice Terry N. Trieweiler specially concurring in part and dissenting in part.

I concur with the majority's conclusions that Sebena's demand for a jury trial was untimely pursuant to Rule 38(b), M.R.Civ.P., and that the District Court did not abuse its discretion when it declined to order a jury trial pursuant to Rule 39(b), M.R.Civ.P.

I dissent from the majority's conclusion that Sebena failed to prove damages.

The majority seems to conclude that because Sebena has no specific record of how many room rentals were directly attributable to his listing by AAA, and because there might have been other factors which also contributed to a decrease in his rental rate, he has not, as a matter of law, proven damages. However, in arriving at its conclusion, the majority has misapplied our decision in *Stensvad v. Miners & Merchants Bank of Roundup* (1982), 196 Mont. 193, 640 P.2d 1303. Pursuant to *Stensvad*, it is not the amount of damages which must be proven with certainty. It is the fact that damages have been sustained which must be proven with reasonable certainty.

In this case, to conclude that there were no damages from being delisted by AAA is to ignore all of AAA's admissions in the form of promotional materials suggesting there is an economic advantage to those who are listed. For example, Exhibit 77 admitted by the District Court includes testimonials from others listed by AAA who state that "[a] 90-day tracking period revealed that 50 % of our business came from the AAA Tourbook" and that

10

"[w]e feel that our AAA Tourbook ad accounts for about 50 % of our total business."

Gene DeFrance is the former employee of the Montana Automobile Association who first approached Sebena about a AAA listing. He promoted the listing by telling Sebena how many members AAA had and how reliant they were on the tour book for information about accommodations. He testified that it was economically advantageous to be listed in the book.

Lisa Sebena is the daughter of William Sebena, and at the time of trial had been the manager of the Lewis and Clark Motel for eight years. In that capacity, she worked in all aspects of the business and was familiar with the motel's volume of business, both while it was listed with AAA and after it was delisted. Lisa testified that prior to the delisting by AAA, close to sixty percent of the motel's business resulted from its inclusion in AAA's tour book. She testified that from her personal observations while working at the motel, there has been a loss of business directly attributable to having the motel removed from the tour book. She testified that many of the people who came to the motel based on a AAA listing walked in off the street, and that for them there would be no record of the fact that they came to the motel because of AAA. However, she also testified that because on occasion potential guests called and asked for the AAA rate and were told that they were no longer affiliated with AAA, she was able to definitely state that they lost business by the loss of their affiliation.

11

William Sebena was asked the following questions and gave the following answers:

Q.    Have you made an observation or a study of your business before when you were AAA affiliated, and your three and four-diamond listings in the tour book, as compared to what you're left with now?

A.    As compared to after we were deleted?

Q.    Right.

A.    Yes.

Q.    And what have been your observations with respect to that?

. . . .

Q.    Tell me about your observations.  What have you observed, what have you done to make these observations about your lessening of business?

A.    We went to our accounting records and compared figures.

. . . .

Q.    And what did you discover in making your comparison of before you were terminated from AAA and afterwards?

A.    I discovered that we were, even though we, in 1994, January and February, we are still listed in the current book, that we had a considerable loss in room rentals by the number of 1,065 . . . .

. . . .

Q.    . . . Can you compute a yearly loss for the year in 1994?

A.    We averaged the cost of the 1993 rooms.

Q.    What was that average?

A.    We averaged $48 and some cents throughout the year.

Q.    You, in fact, figured $48.36; is that correct?

12

A.   Yes.  And then we multiplied it by those 1,065 rooms and arrived at a quite accurate figure at a loss.

. . . .

Q.   In using those figures, can you tell us the amount of money that you lost during the 1994 calendar year?

A.   $48.36?

Q.   Right.

A.   $51,503.40.

Steve Hamilton, who is a certified public accountant and has practiced in Montana since 1978, and was allowed by the District Court to testify as an expert witness, testified that he had been Sebena's accountant for seven or eight years at the time of trial. He testified that the method used by Sebena to calculate his annual loss from being delisted by AAA was reasonable in light of what he knew about the business's prior history and trends for other businesses in the Bozeman area.  He also testified that as of 1993, Sebena had run a profitable business and that it would not have been unreasonable to expect him to continue operating the business in that fashion for an additional twenty years.

If there was no economic advantage to being listed, then how could AAA charge, and why would Sebena and thousands of others pay to be listed?  If there was an economic advantage to being listed, then there had to be an economic disadvantage from being delisted.

In sum, it was not speculative that damages had been sustained as a result of the fact that the Lewis and Clark Motel was excluded from AAA's Tourbook.  Pursuant to our previous decisions, once the probability of damage has been shown, the loss of profits need only

be computed on the basis of the best evidence available. Sebena provided the best evidence available and the District Court had an obligation to arrive at some calculation of damages based on that evidence.

Because I conclude that the District Court erred in its finding that no damages were sustained, I conclude that the District Court also erred when it failed to address the plaintiff's specific claim that the defendant breached an express contract with the plaintiff by excluding his business from the AAA Tourbook, in spite of his alleged efforts to improve the premises to the extent of his financial ability. Rule 52(a), M.R.Civ.P., provides in part as follows: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon."

In this case, the court made no finding that a contract did or did not exist, and therefore made no finding which resolved Sebena's allegation that AAA had breached its contract with him. The District Court did conclude that plaintiff failed to prove that AAA had acted arbitrarily, capriciously, or fraudulently when it delisted the motel, and further concluded that plaintiff had not proven interference with a prospective business advantage, but made no conclusions regarding the existence of or breach of a contract between the parties.

Instead of entering findings or conclusions related to Sebena's contract claim, the District Court simply concluded that:

14

"Assuming AAA did do something wrong, Plaintiff has failed to show that he suffered any damages."

For the reasons, and based on the facts set forth above, I conclude that plaintiff did offer proof of damages. The District Court's responsibility was to determine whether there had been a breach of contract and the amount of damages that had been proven.

For these reasons, I dissent from the majority's conclusion that no damages were proven. I would reverse the judgment of the District Court and remand for findings and conclusions regarding Sebena's contract claim. If the District Court found and concluded that a contract existed between the parties and had been breached by AAA, then I conclude the District Court should have arrived at a calculation of damages sustained by Sebena as a result of AAA's contractual breach.

_____
Justice

15

December 19, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

KEVIN E. VAINIO
Attorney at Law
27 West Park Street
Butte, MT 59701

BARRY G. O'CONNELL
Attorney at Law
P.O. Box 1288
Bozeman, MT 59771-1288

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy