DA 08-0386

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 441

DELANEY & COMPANY,

       Plaintiff and Appellee,

    v.

CITY OF BOZEMAN,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 03-354
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Robert F. James (argued), Cathy J. Lewis; Ugrin, Alexander,
Zadick & Higgins, PC, Great Falls, Montana

            Allan H. Baris; Moore, O'Connell & Refling, PC, Bozeman, Montana

      For Appellee:

            David M. Wagner (argued); Crowley Fleck PLLP, Bozeman, Montana

Argued:  September 23, 2009
Submitted:  September 23, 2009
Decided:  December 23, 2009

Filed:

_____
                        Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Delaney & Company, a Montana corporation, (Delaney) brought suit against the City of Bozeman and its former city manager (together referred to as Bozeman) in the Eighteenth Judicial District Court, Gallatin County, seeking damages for lost profits. Delaney's complaint alleges constructive fraud, negligent misrepresentation, and intentional interference with prospective economic advantage. The jury returned a verdict in favor of Delaney in the amount of $3,000,000. Bozeman now appeals. We affirm.

¶2 We restate and consolidate the issues raised as follows:

¶3 Issue 1: Did the District Court err in ruling the governmental liability cap of $750,000 contained in § 2-9-108(1), MCA, does not apply?

¶4 Issue 2: Did the District Court err in ruling that its order entered as a sanction, that Bozeman is liable to Delaney, includes the element of causation?

¶5 Issue 3: Did the District Court err when it instructed the jury that it must award damages for lost profits?

¶6 Issue 4: Did the District Court err in allowing the testimony of an expert concerning lost profits?

¶7 Issue 5: Did the District Court err in not including necessary standards to assess damages for lost profits in its instructions to the jury?

## BACKGROUND

¶8 Delaney is a Montana corporation that is engaged in developing and managing property in the Bozeman area. In May and June 2003, Delaney attempted to purchase

2

land referred to as the Mandeville Ranch. At the same time Delaney was attempting to negotiate with the Mandevilles, Bozeman decided to construct a new waste transfer station (WTS) because its landfill was projected to be full by November 2003. Delaney knew of Bozeman's solid waste dilemma. In May 2003, Mike Delaney, Delaney's principal shareholder and president of the company, told Bozeman's director of public works that Delaney wanted to purchase and develop the Mandeville property into an industrial park, a portion of which could accommodate a WTS.

¶9 Delaney struck a deal on a price per acre with the Mandevilles. The Mandevilles had been attempting to sell their property for ten years, and the first offer to purchase was Delaney's. Mike Delaney revealed to Lloyd Mandeville (the Mandevilles' son and listing agent) that he planned to locate the WTS on the property and develop the balance into an industrial park.

¶10 Delaney had worked out detailed plans to develop the Mandeville property, including an analysis of the property layout, easements, and a location for a WTS. Mike Delaney had multiple meetings with Montana Rail Link regarding rail service and had investigated the State of Montana's potential use of the property. Mike Delaney discussed his plans with the Bozeman city manager, who told him that the city would review the information and get back to him. Bozeman's city manager also told him that it would provide him with Bozeman's WTS design layouts. Instead, the city manager contacted Lloyd Mandeville and started to negotiate with the Mandevilles on behalf of Bozeman. Delaney was unaware that Bozeman had started negotiations directly with the Mandevilles.

3

¶11 Thereafter, Bozeman executed a buy-sell for the Mandeville property. Bozeman had not revealed to Delaney that it desired to purchase the property, but rather told Mike Delaney that it supported his company's plans to purchase and develop the property. After Bozeman had completed the purchase of the Mandeville property, Delaney filed this suit.

¶12 During the course of this litigation, the District Court, as a sanction for discovery abuse, ordered that Bozeman was liable to Delaney. This order established that Bozeman had interfered with the purchase and development of the Mandeville property resulting in injury to Delaney. Bozeman does not appeal this order.

¶13 This case proceeded to a jury trial on damages. At trial, Delaney presented four witnesses to establish that Mike Delaney had extensive experience in real estate and development. Delaney also presented the testimony of Bozeman's own expert consultant, Erik Nelson who, in 2006, had presented the city a development plan for the Mandeville property. Nelson opined that Bozeman would make a profit of at least $3,000,000 from developing the property.

¶14 The District Court refused Bozeman's proposed instructions that Delaney was required to prove that it had caused him damage, and instead instructed the jury it was to determine the amount of damage suffered. The District Court also refused Bozeman's proposed instructions concerning damages for lost profits. The jury awarded $3,000,000 to Delaney for lost profits. Bozeman appeals.

**STANDARDS OF REVIEW**

4

¶15    The District Court's determination that the governmental liability cap of $750,000 contained in § 2-9-108(1), MCA, does not apply in this case, is a conclusion of law. Our review of conclusions of law is plenary. *In re Marriage of Guffin*, 2009 MT 169, ¶ 6, 350 Mont. 489, 209 P.3d 225.

¶16    We review a district court's evidentiary rulings for an abuse of discretion. A district court abuses its discretion when it acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *Anderson v. Woodward*, 2009 MT 144, ¶ 13, 350 Mont. 343, 207 P.3d 329; *State v. Stearns*, 2008 MT 356, ¶ 13, 346 Mont. 348, 195 P.3d 794.

¶17    A district court has discretion in deciding how to instruct a jury, and we will not reverse a district court's decision absent an abuse of that discretion. *Edie v. Gray*, 2005 MT 224, ¶ 12, 328 Mont. 354, 121 P.3d 516. When we review instructions to a jury to determine whether they were properly given or refused, we consider the instructions in their entirety, as well as in connection with the other instructions given and the evidence admitted during the trial. *Busta v. Columbus Hosp. Corp.*, 276 Mont. 342, 359, 916 P.2d 122, 132 (1996).

## DISCUSSION

¶18    *Issue 1: Did the District Court err in ruling the governmental liability cap of $750,000 contained in § 2-9-108(1), MCA, does not apply?*

¶19    Delaney and Bozeman agree that the resolution of this issue turns on the application of pertinent statutes. Bozeman argues that the judgment should be reduced from $3,000,000 to $750,000 pursuant to § 2-9-108(1), MCA, which provides, in part:

5

The state, a county, municipality, taxing district, or any other political subdivision of the state is not liable in tort action for damages suffered as a result of an act or omission of an officer, agent, or employee of that entity in excess of $750,000 for each claim and $1.5 million for each occurrence.

¶20 A claim to which § 2-9-108(1), MCA, applies is defined as:

"Claim" means any claim against a governmental entity, for money damages only, that any person is legally entitled to recover as damages because of personal injury or property damage caused by a negligent or wrongful act or omission committed by any employee of the governmental entity while acting within the scope of employment, under circumstances where the governmental entity, if a private person, would be liable to the claimant for the damages under the laws of the state. For purposes of this section and the limit of liability contained in 2-9-108, all claims that arise or derive from personal injury to or death of a single person, or damage to property of a person, regardless of the number of persons or entities claiming damages, are considered one claim.

Section 2-9-101(1), MCA. Property damage, for the purposes of § 2-9-101(1), MCA, means "injury or destruction to tangible property, including loss of use of the property, caused by an occurrence for which the state may be held liable." Section 2-9-101(6), MCA.

¶21 Bozeman argues on appeal that the District Court erred in holding that Delaney's claim in this case does not constitute a claim to which the $750,000 limit in § 2-9-108(1), MCA, applies. Bozeman posits that the phrase "injury or destruction to tangible property, including loss of use of the property," in § 2-9-101(6), MCA, encompasses both the loss of use of property which has been injured or destroyed, in addition to the loss of use of property under circumstances where the property has not been injured or destroyed. Thus, Bozeman argues that because Delaney lost the use of the Mandeville

6

property to sell for a profit, Delaney's suit constitutes a claim and the $750,000 limit on damages applies.

¶22    We interpret statutes by looking at their plain language. *Montana Sports Shooting Assn., Inc. v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003. When interpreting statutes, this Court's only function is to give effect to the intent of the legislature. *Albright v. State*, 281 Mont. 196, 206, 933 P.2d 815, 821 (1997). A whole act must be read together and where possible, full effect will be given to all statutes involved. *Carlson v. City of Bozeman*, 2001 MT 46, ¶ 15, 304 Mont. 277, 20 P.3d 792; *Albright*, 281 Mont. at 206, 933 P.2d at 821.

¶23    Section 2-9-108(1), MCA, which contains the $750,000 limit on damages, only applies to those tort actions which constitute a "claim" as defined in § 2-9-101(1), MCA. As there is no personal injury in this case, the claim must be for property damage as described in § 2-9-101(6), MCA, in order for the limit on damages to apply. The District Court held that the phrase "loss of use of the property" in § 2-9-101(6), MCA, does not include a loss of use of property when there has been no injury or destruction to tangible property.

¶24    The only reasonable meaning of the phrase "including loss of use of the property" in § 2-9-101(6), MCA, is that it refers to tangible property that has been injured or destroyed. It adds an element of damage that may be recovered; however, any recovery must be the result of an injury to or destruction of tangible property. In this case, Bozeman tortiously interfered with Delaney's ability to acquire the Mandeville property, causing Delaney to suffer a loss of profits. *See Continental Ins. Co. v. Bones*, 596

7

N.W.2d 552, 557 (Iowa 1999). In this case there is no damage to tangible property. Lost profits are in the nature of an intangible economic interest. *See Graber v. State Farm Fire & Cas. Co.*, 244 Mont. 265, 269, 797 P.2d 214, 216 (1990).

¶25 As there was no injury to or destruction of tangible property, Delaney has made no "claim" against Bozeman as that term is defined in § 2-9-101(1), MCA. Therefore the District Court is correct that the $750,000 limit on damages in § 2-9-108(1), MCA, does not apply in this case.

¶26 *Issue 2: Did the District Court err in ruling that its order entered as a sanction, that Bozeman is liable to Delaney, includes the element of causation?*

¶27 After considering Delaney's motion for sanctions because of significant discovery abuse by Bozeman, the District Court ordered:

> 1. Plaintiff's Renewed Motion to Sanction Defendant for Discovery Abuse is GRANTED.
>
> 2. Default on liability on all claims of the complaint is entered as to Defendants.
>
> 3. Defendants' defenses are stricken.
>
> 4. The Clerk of the District Court shall immediately notify counsel by telephone or e-mail that this Decision and Order has been issued.
>
> 5. A Pretrial Conference to establish the procedure for litigating the issue of damages is set for . . . .

¶28 Bozeman does not appeal from this order establishing that all of its defenses are stricken and it is liable to Delaney. Nevertheless, Bozeman argues that the District Court erred in not allowing it to submit to the jury the question of whether its conduct caused Delaney any injury. Bozeman contends that even though the above order was entered,

8

the District Court erroneously prevented it from presenting proof that Delaney would not have been able to raise the money to purchase the Mandeville property or that the Mandevilles would not have sold the property to Delaney even if Delaney could have raised the money to buy the property. Therefore, Bozeman argues its tortious interference with Delaney's business opportunity did not cause any damage.

¶29 The District Court reiterated that when the default was entered on the issue of liability, it was established that Bozeman had caused Delaney damages. Not only did the District Court include in its sanction order that the only remaining issue was the amount of damages Delaney suffered, it is correct that a finding of liability establishes causation of an injury. *Burk Ranches v. State*, 242 Mont. 300, 308-09, 790 P.2d 443, 448 (1990). Once liability is established, the jury does not need to consider evidence of the cause of the injury. *Burk Ranches*, 242 Mont. at 308-09, 790 P.2d at 448.

¶30 When the District Court ordered that Bozeman was liable to Delaney, questions concerning whether it would have been able to purchase the Mandeville property and whether this had caused damage were answered in Delaney's favor. The only question left for the jury was the amount of damages.

¶31 *Issue 3: Did the District Court err when it instructed the jury that it must award damages for lost profits?*

¶32 Bozeman argues that the District Court erred in not instructing the jury that it was free to consider whether Delaney had actually suffered any damages. The District Court rejected Delaney's proposed instruction to this effect and instead instructed the jury:

9

Delaney & Company has sustained damage as a result of the conduct of the City of Bozeman in this matter. The only remaining issue for you to decide in this matter is the amount of monetary damages to award Delaney & Company.

The District Court further instructed:

Because the City of Bozeman is liable to Delaney & Company for constructive fraud, negligent misrepresentation and intentional interference with business relations, you must now determine the amount of money which will reasonably and fairly compensate Delaney & Company for all its loss, regardless of whether such loss could have been anticipated.

¶33 Bozeman argues that the District Court erred by not including the phrase "if any" in the jury instructions on damages because, by omitting this phrase, it could not argue to the jury that Delaney had not suffered any amount of lost profit. However, Bozeman did not present any evidence that the property it wrongfully acquired could not be sold for a profit. The only evidence before the jury was that there would be some profit when the land was developed and either utilized or sold by its owner. A district court does not need to instruct on a theory unless there is evidence to support the theory. *Howard v. St. James Community Hosp.*, 2006 MT 23, ¶ 26, 331 Mont. 60, 129 P.3d 126. The District Court did not err when it instructed the jury that it must award some amount for lost profits.

¶34 *Issue 4: Did the District Court err in allowing the testimony of an expert concerning lost profits?*

¶35 Delaney presented the testimony of a consultant who had been retained by Bozeman to assist the city in preparing a master plan for the development of the Mandeville property. His work included an economic analysis and a feasibility study of

10

various ways in which the property could be developed. His analysis predicted a profit to Bozeman of $3,000,000, which was ultimately the amount of the jury's verdict.

¶36 Bozeman does not object to the expert qualifications of the witness. Its objection is that his testimony was too speculative. Bozeman complains that the testimony was not admissible because the property has never been developed, the plans entailed substantial risk, the plans were developed after it purchased the property, and the plans are dissimilar to what Delaney had planned for the property.

¶37 Damages for loss of profits may not be awarded if the loss is mere speculation. However, the rule prohibiting an award of speculative future profits does not apply to uncertainty as to the amount of such profits, but to uncertainty or speculation as to whether the loss of profits is the result of the wrong and whether such profit would have been derived at all. *Sebena v. American Auto. Assn*, 280 Mont. 305, 310, 930 P.2d 51, 54 (1996) (citing *Stensvad v. Miners & Merchants Bank, Etc.*, 196 Mont. 193, 206, 640 P.2d 1303, 1310 (1982)). In this case, the District Court's order that Bozeman is liable to Delaney established that Delaney suffered a loss of future profits as a result of Bozeman's conduct. Once Bozeman's liability was established, an expert's estimate of the loss, based on a reasonable computation and the best evidence available under the circumstances, is sufficient to support the amount fixed by the finder of fact. *Sebena*, 280 Mont. at 310, 930 P.2d at 54; *Stensvad*, 196 Mont. at 206, 640 P.2d at 1310. The expert witness had developed several alternative ways in which the property could be utilized, analyzed the properties potential for profit, and his opinion was based on a reasonable

11

estimate of the loss suffered by Delaney. The District Court did not err in admitting this testimony.

¶38    *Issue 5: Did the District Court err in not including necessary standards to assess damages for lost profits in its instructions to the jury?*

¶39    Relating to lost profits, in its Instruction No. 13 the District Court instructed the jury as follows:

> Because the City of Bozeman is liable to Delaney & Company for constructive fraud, negligent misrepresentation and intentional interference with business relations, you must now determine the amount of money which will reasonably and fairly compensate Delaney & Company for all of its loss, regardless of whether such loss could have been anticipated.
>
> Your award should include lost profit or other prospective gain from the operation of Delaney & Company's business, which in this case was the purchase and development of the Mandeville Ranch property. Damages for lost profits or other gains are recoverable only to the extent that the evidence affords a reasonable basis for their determination. However, recovery cannot be denied simply because damages are difficult to determine.

¶40    Parroting its arguments discussed above relating to Issues 2, 3, and 4, Bozeman argues that the District Court erred in giving the jury Instruction No. 13 because the instruction does not state that the jury must first find if any loss was caused by Bozeman's actions before awarding lost profits. Bozeman further argues that the District Court erred in the instruction because it omits a statement that damages for loss of future profits cannot be awarded if they are the product of speculation.

¶41    Damages for lost profits that are clearly ascertainable both in nature and origin may be awarded. *Sebena*, 280 Mont. at 310, 930 P.2d at 54; *Stensvad*, 196 Mont. at 206,

12

640 P.2d at 1310. The sanction order noted in ¶ 27 above established the nature and cause of the lost profits claimed by Delaney.

¶42 Once the fact that damages exist is established, the trier of fact determines the amount of damages. *Bottrell v. American Bank*, 237 Mont. 1, 22-23, 773 P.2d 694, 707-08 (1989). Damages for lost profits may be awarded even if the amount cannot be proved with certainty. *Bottrell*, 237 Mont. at 22-23, 773 P.2d at 707; *Stensvad*, 196 Mont. at 206, 640 P.2d at 1310. Instruction No. 13 correctly told the jury that damages for lost profits or other gains are recoverable only to the extent that the evidence affords a reasonable basis for its determination. *Sebena*, 280 Mont. at 310, 930 P.2d at 54.

¶43 The District Court did not err in giving its Instruction No. 13.

## CONCLUSION

¶44 The District Court did not err in ruling that the limit on damages that may be recovered from a municipality contained in § 2-9-108(1), MCA, is not applicable. Bozeman has not established reversible error.

¶45 Affirmed.

/S/ JOHN WARNER

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA O. COTTER
/S/ JIM RICE


Justice Brian Morris concurs.

¶46 I concur with the Court's decision to affirm the judgment of the District Court. I would not follow the Court's attempt to make sense of the language contained in § 2-9-

13

108, MCA, and the statute's accompanying tortuous efforts to define "claim," "personal injury," and "property damage" contained in § 2-9-101, MCA.

¶47   I would hold instead that the City of Bozeman shed whatever protection that the limit on liability granted by § 2-9-108, MCA, may have provided when it elected to act outside its normal governmental functions and serve in the equivalent role as a private real estate developer. Application of the liability limit in this context would lead to perverse incentives for governmental entities to pursue courses of action not otherwise advised but for the limit on liability.

¶48   Courts have adopted a similar approach in other contexts. For example, the U.S. Supreme Court's landmark decision in *Parker v. Brown*, 317 U.S. 341, 63 S. Ct. 307 (1943), exempts from the operation of the federal antitrust laws nearly any action taken by a governmental entity that qualifies as state action. The governmental entity sheds the protection afforded by the *Parker* defense, however, when the governmental entity chooses to become a market participant. *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 277, 108 S. Ct. 1803, 1809 (1988). The City of Bozeman shed the protection afforded by the liability limit contained in § 2-9-108, MCA, when it stepped out if its traditional role to pursue a new role as a private real estate developer.

/S/ BRIAN MORRIS

Justices W. William Leaphart and James C. Nelson join in the foregoing concurrence.

/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON

14