FILED

12/29/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 16-0555

OP 16-0555

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 324

ATLANTIC RICHFIELD COMPANY,

      Petitioner,

  v.

MONTANA SECOND JUDICIAL DISTRICT
COURT, SILVER BOW COUNTY, THE HON.
KATHERINE M. BIDEGARAY,

      Respondent,

| | |
|---|---|
| ORIGINAL PROCEEDING: | Petition for Writ of Supervisory Control<br>District Court of the Second Judicial District,<br>In and for the County of Silver Bow,<br>Cause No. DV-08-173BN<br>Honorable Katherine M. Bidegaray, Presiding Judge |

COUNSEL OF RECORD:

      For Petitioner:

            Jonathan W. Rauchway (argued), Shannon Wells Stevenson, James R.
            Henderson, Davis Graham & Stubbs LLP, Denver,  Colorado

            John P. Davis, Patrick M. Sullivan, Poore, Roth & Robinson, P.C.,
            Butte, Montana

      For Plaintiff Gregory Christian, et al.:

            Monte D. Beck, Justice P. Stalpes (argued), Beck, Amsden
            & Stalpes, PLLC, Bozeman, Montana

            J. David Slovak, Mark M. Kovacich, Ross Johnson, Lewis, Slovak,
            Kovacich & Snipes, PC, Great Falls, Montana

      For Amicus Curiae:

            John C. Cruden, Matthew R. Oakes (argued), Assistant Attorneys General,
            United States Department of Justice, Washington D.C.

Domenic A. Cossi (argued), Western Justice Associates, PLLC, Bozeman, Montana
(*Attorney for Amicus Curiae Montana Trial Lawyers Association*)

Roger Sullivan, McGarvey, Neberling, Sullivan & Lacey, Kalispell, Montana
(*Attorneys for Montana Environmental Information Center*)

Kurt G. Alme, United States Attorney, Victoria Francis, Assistant United Stated Attorney, District of Montana, Billings, Montana
(*Attorneys for Amicus Curiae United States of America*)

Elizabeth A. Brennan, Brennan Law & Mediation, PLLC, Missoula, Montana
(*Attorneys for Amicus Curiae Clark Fork Coalition*)

Argued:  April 7, 2017
Submitted:  April 11, 2017
Decided:  December 29, 2017

Filed:

Clerk

# OPINION AND ORDER

Justice James Jeremiah Shea delivered the Opinion and Order of the Court.

¶1 Petitioner Atlantic Richfield Company ("ARCO") petitioned this Court for a writ of supervisory control, seeking reversal of five orders of the Second Judicial District Court in Silver Bow County in the matter of *Christian, et al. v. Atlantic Richfield Co*. Relevant to the issue before us, the action in the District Court concerns a claim for restoration damages brought by property owners in and around the town of Opportunity, Montana (hereafter referred to as "Property Owners"). We accepted supervisory control of this case for the limited purpose of considering the District Court's August 30, 2016 Order Denying ARCO's Motion for Summary Judgment on Property Owners' Claim for Restoration Damages as Barred by CERCLA and Granting Property Owners' Motion for Summary Judgment on ARCO's CERCLA Preemption Affirmative Defenses (11th–13th). We restate the issues as follows:

> *Issue One: Whether the Property Owners' claim constitutes a challenge to EPA's selected remedy, and thus does not comply with CERCLA's timing of review provision.*
>
> *Issue Two: Whether the Property Owners are "Potentially Responsible Parties," and thus cannot proceed with their chosen restoration activities without EPA approval.*
>
> *Issue Three: Whether the Property Owners' claim otherwise conflicts with CERCLA, and is thus preempted.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 The Anaconda Smelter, originally constructed by the Anaconda Copper Mining Company, processed copper ore from Butte for nearly one hundred years before shutting

3

down in 1980. Also in 1980, Congress passed the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, et seq. Also known as "Superfund," the purpose of CERCLA is to foster the cleanup of sites contaminated by hazardous waste, and to protect human health and the environment. In 1983, the Environmental Protection Agency ("EPA") designated the area impacted by the Anaconda Smelter, now owned by ARCO, as a Superfund site. In 1984, EPA issued an administrative order requiring ARCO to begin a remedial investigation at the Smelter Site. In 1998, EPA selected a remedy pursuant to CERCLA that detailed ARCO's cleanup responsibilities moving forward.

¶3 As part of ARCO's cleanup responsibility, EPA required ARCO to remediate residential yards within the Smelter Site harboring levels of arsenic exceeding 250 parts per million in soil, and to remediate all wells used for drinking water with levels of arsenic in excess of ten parts per billion. The Property Owners, a group of ninety-eight landowners located within the bounds of the Smelter Site, sought the opinion of outside experts to determine what actions would be necessary to fully restore their properties to pre-contamination levels. The experts recommended the Property Owners remove the top two feet of soil from affected properties and install permeable walls to remove arsenic from the groundwater. Both remedies required restoration work in excess of what the EPA required of ARCO in its selected remedy.

¶4 The Property Owners filed this action in 2008, claiming common law trespass, nuisance, and strict liability against ARCO, and seeking restoration damages. Any

4

recovered restoration damages are to be placed in a trust account and distributed only for the purpose of conducting restoration work.

¶5 In 2013, ARCO moved for summary judgment on the grounds that CERCLA barred the Property Owners' claims. The District Court did not address ARCO's CERCLA preemption issue because it dismissed the Property Owners' case on the basis that their claims were barred by the statute of limitations. The Property Owners appealed and we affirmed in part, reversed in part, and remanded the case to the District Court for further proceedings. *Christian v. Atl. Richfield Co.*, 2015 MT 255, ¶ 79, 380 Mont. 495, 358 P.3d 131. On remand, the District Court denied all of ARCO's contested motions for summary judgment. Among the orders denied was ARCO's Motion for Summary Judgment on the Property Owners' Claim for Restoration Damages as Barred by CERCLA. ARCO petitioned this Court for a writ of supervisory control, asking us to vacate four of the District Court's orders denying summary judgment and one order on a motion in limine. On October 5, 2016, we issued an order granting the writ for the limited purpose of considering the District Court's 2016 Order Denying ARCO's Motion for Summary Judgment on Property Owners' Claim for Restoration Damages as Barred by CERCLA and Granting Property Owners' Motion for Summary Judgment on ARCO's CERCLA Preemption Affirmative Defenses (11th–13th).

¶6 The Property Owners bring several claims against ARCO: (1) injury to and loss of use and enjoyment of real and personal property; (2) loss of the value of real property; (3) incidental and consequential damages, including relocation expenses and loss of rental income and/or value; (4) annoyance, inconvenience, and discomfort over the loss and

prospective loss of property value; and (5) expenses for and cost of investigation and restoration of real property. ARCO concedes that the Property Owners may move forward on their first four claims, but contend that the claim for restoration damages is preempted by CERCLA.

## STANDARD OF REVIEW

¶7 We review de novo a district court's grant or denial of summary judgment, applying the same criteria of M. R. Civ. P. 56 as a district court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839. Under Rule 56(c), judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Roe v. City of Missoula*, 2009 MT 417, ¶ 14, 354 Mont. 1, 221 P.3d 1200 (citation omitted).

## DISCUSSION

¶8 In *Sunburst School Dist. No. 2 v. Texaco*, 2007 MT 183, ¶ 34, 338 Mont. 259, 165 P.3d 1079, we held: "If a plaintiff wants to use the damaged property, instead of selling it, restoration of the property constitutes the only remedy that affords a plaintiff full compensation." To recover restoration damages, a plaintiff must show (1) the injury to the property is reasonably abatable, and (2) the plaintiff has "reasons personal" for seeking restoration damages. *Lampi v. Speed*, 2011 MT 231, ¶ 29, 362 Mont. 122, 261 P.3d 1000 (citing *Sunburst*, ¶¶ 31–39). In *Sunburst*, the plaintiffs sought restoration damages from Texaco to restore their properties to the condition the properties would have been in absent

6

a benzene leak from a Texaco gasoline refinery. *Sunburst*, ¶ 38. Texaco argued that the plaintiffs' common law claim for restoration damages was preempted by Montana's Comprehensive Environmental Cleanup and Responsibility Act (CECRA), a state statute similar in purpose and scope to CERCLA. *Sunburst*, ¶ 55. We further noted in *Sunburst* that "[a] presumption exists against statutory preemption of common law claims. A statute does not take away common law claims except to the extent that the statute expressly or by necessary implication declares." *Sunburst*, ¶ 51 (internal citations omitted). Accordingly, we held: "[N]o conflict exists between DEQ's supervisory role under CECRA and restoration damages awarded under the common law. We further conclude that nothing in CECRA precludes a common law claim by necessary implication." *Sunburst*, ¶ 59.

¶9     ARCO argues that the Property Owners may not bring their state law claim for restoration damages because the claim conflicts with various provisions of CERCLA, and thus are preempted. Preemption is established expressly, through the unambiguous language of Congress in statute, or impliedly through the doctrines of field preemption or conflict preemption. *Oneok, Inc. v. Learjet, Inc.*, ___ U.S. ___, 135 S. Ct. 1591, 1594–95 (2015). Field preemption exists if Congress intended the relevant federal law to entirely occupy the field. *California v. ARC Am. Corp.*, 490 U.S. 93, 100, 109 S. Ct. 1661, 1665 (1989). There is no field preemption in this case, as CERCLA expressly allows for complementary state laws, including common law, through a series of savings clauses:

> Nothing in [CERCLA] shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common

law, with respect to releases of hazardous substances or other pollutants or contaminants. . . .

42 U.S.C. § 9652(d).

Nothing in [CERCLA] shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State.

42 U.S.C. § 9614(a).

¶10 ARCO advances three arguments regarding how it contends CERCLA bars the Property Owners' claim for restoration damages: (1) Property Owners' restoration damages claim constitutes a direct challenge to EPA's selected remedy and CERCLA's timing of review provision, 42 U.S.C. § 9613(h) ("CERCLA § 113(h)"), prevents this Court from hearing challenges to an EPA remedy; (2) the Property Owners are "potentially responsible parties" under CERCLA, and as such may not perform any restoration activities without EPA approval; and (3) the Property Owners' claim otherwise conflicts with CERCLA and is barred under the doctrine of conflict preemption. We address each of these arguments in turn.

¶11 *Issue One: Whether the Property Owners' claim constitutes a challenge to EPA's selected remedy, and thus does not comply with CERCLA's timing of review provision.*

¶12 ARCO cites CERCLA's "timing of review" provision, § 113(h), for the proposition that CERCLA expressly preempts the Property Owners' claim by denying Montana courts jurisdiction over any challenges to a CERCLA cleanup. Section 113(h) reads, in relevant part:

No Federal court shall have jurisdiction under Federal law other than under section 1332 of title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section

8

§ 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section of § 9604 of this title, or to review any order issued under section § 9606(a) of this title. . . .

At the outset, it bears noting that this statute begins: "No *Federal* court shall have jurisdiction under *Federal* law . . . ." (Emphasis added). Conspicuously absent is any reference to state court jurisdiction over state law claims. It is well-established that "[i]n the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA.

¶13 ARCO relies on a Ninth Circuit Court of Appeals case in which the Ninth Circuit read § 113(h) together with § 113(b) to conclude that Montana state courts lack jurisdiction over any claims that "constitute 'a challenge to a CERCLA cleanup.'" *ARCO Envtl. Remediation, LLC v. Dep't of Health & Envtl. Quality*, 213 F.3d 1108, 1115 (9th Cir. 2000). The Ninth Circuit concluded that because § 113(b) grants federal courts "exclusive original jurisdiction over all controversies arising under [CERCLA]," it interpreted § 113(h)'s reference to "challenges to removal or remedial action" to be a "controversy arising under [CERCLA]," and thus exclusively within the jurisdiction of the federal courts. *ARCO Envtl. Remediation*, 213 F.3d at 1115.

¶14 Irrespective of this jurisdictional question, however, ARCO acknowledges that its argument for conflict preemption under § 113(h) turns on whether the Property Owners' claim for restoration damages "challenges" the CERCLA cleanup. We have not previously addressed what constitutes a "challenge" within the context of § 113(h). In *ARCO Environmental Remediation* the Ninth Circuit defined a "challenge" as a claim that "is

9

related to the goals of the cleanup." *ARCO Envtl. Remediation*, 213 F.3d at 1115. More

specifically, the Ninth Circuit further held that a "challenge" was any action in which a

party seeks "to dictate specific remedial actions; to postpone the cleanup; to impose

additional reporting requirements on the cleanup; or to . . . alter the method and order of

cleanup." *ARCO Envtl. Remediation*, 213 F.3d at 1115 (internal citations omitted).

Another definition comes from the Southern District of Indiana. In *Taylor Farm Ltd. Liab.

Co. v. Viacom, Inc.*, 234 F. Supp. 2d 950, 974–75 (S.D. Ind. 2002), the Indiana District

Court rejected the defendant's proposed definition of a challenge as being anything more

comprehensive than the EPA-selected remedy. The Court held:

> [T]he only sense in which Taylor's lawsuit can be said to "challenge"
> Viacom's settlement agreement with the EPA is that, if Taylor is successful,
> Viacom will be required to spend more money to clean up the land for
> Taylor's benefit than the EPA required Viacom to spend for the public's
> benefit.

*Taylor Farm*, 234 F. Supp. 2d at 976. Yet another interpretation comes from *Samples v.

Conoco, Inc.*, 165 F. Supp. 2d 1303, 1315–16 (N.D. Fla 2001), in which the Florida District

Court concluded the plaintiffs' claim was not a "challenge" under § 113(h), because:

> [It] is not an action designed to review or contest the remedy selected by the
> EPA prior to implementation; it is not an action designed to obtain a court
> order directing the EPA to select a different remedy; it is not an action
> designed to delay, enjoin, or prevent the implementation of a remedy selected
> by the EPA; and it is not a citizen suit brought pursuant to 42 U.S.C. § 9659.

Still other interpretations come from the Third Circuit in *Boarhead Corp. v. Erickson*, 923

F.2d 1011, 1019, 1024 (3rd Cir. 1991) (holding a claim is a challenge only if it "would

interfere" with or "delay[] the prompt cleanup" of hazardous sites); and the District of New

Mexico in *Reynolds v. Lujan*, 785 F. Supp. 152, 154 (D.N.M. 1992) (holding a claim is a challenge if it would require the court to "alter the [EPA's] ongoing response activities.").

¶15 Synthesizing the various interpretations of what constitutes a "challenge" in light of the nature of the Property Owners' claim and CERCLA's savings clauses evinces that, fundamentally, a § 113(h) challenge must actively interfere with EPA's work, as when the relief sought would stop, delay, or change the work EPA is doing. At a minimum, a "challenge" must be more than merely requiring ARCO to spend more money to clean up the land for the Property Owners' benefit, as the court in *Taylor Farm* noted. In this case, the restoration damages Property Owners seek are to be placed in a trust account and used to further restore affected properties beyond the levels required by the EPA, and the restoration work would be completed by the Property Owners themselves. To the extent that EPA's work is ongoing, the Property Owners are not seeking to interfere with that work, nor are they seeking to stop, delay, or change the work EPA is doing. The Property Owners' claim is exactly the sort contemplated in CERCLA's savings clauses, and does not present a "challenge" to EPA's selected remedy. Absent a "challenge" to removal or remedial action selected in the CERCLA cleanup process, §§ 113(h) and (b) do not deprive Montana courts of jurisdiction to entertain state-law restoration claims.

¶16 Despite ARCO's efforts to overcomplicate this matter and recast what is, at its essence, a common law claim for damages into a challenge to EPA's cleanup, the fundamental issue before us is one of timing. Specifically, when can private landowners bring a state common law claim for restoration damages for the purpose of cleaning up their own private property? The Dissent maintains that any such claim, if it relates to the

11

goals of the cleanup, must wait until the EPA has completed its work and moved on because CERCLA "protects the execution of a CERCLA plan *during its pendency* from lawsuits that might interfere with the expeditious cleanup effort." Dissent, ¶ 48, quoting *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 329 (9th Cir. 1995) (hereinafter referred to as *MESS*) (emphasis in original). Even by the Dissent's analysis, though, the Property Owners' claim does not constitute a challenge to EPA's plan. The Dissent cites a litany of cases from other jurisdictions in ostensible support of the contention that the Property Owners' damage claim constitutes a challenge to EPA's remediation plan. Dissent, ¶ 44. These cases are inapposite to the Property Owners' claim presently before us. None of the cases cited by the Dissent, nor any of the cases cited by ARCO or the United States, involve a claim by private property owners, against another private party, seeking money damages for the purpose of restoring their own private property. The Property Owners are not asking the Court "to dictate specific remedial actions." The Property Owners are not asking the Court to "impose additional reporting requirements on the cleanup." The Property Owners are not asking the Court to "terminate the Remedial Investigation/Feasibility Study (RI/FS) and alter the method and order of cleanup." Nothing in the Property Owners' claim for restoration damages "stands as an obstacle to the accomplishment of congressional objectives as encompassed in CERCLA," unless Congress's objective was to condemn, in perpetuity, the private property of an individual property owner because that property happened to have been contaminated by a third party.

¶17     Put simply, the Property Owners are not asking the Court to interfere with the EPA's plan. The Property Owners are not seeking to enjoin any of EPA's activities, or requesting

that EPA be required to alter, delay, or expedite its plan in any fashion whatsoever. The Property Owners are simply asking to be allowed to present their own plan to restore their own private property to a jury of twelve Montanans who will then assess the merits of that plan. If the jury awards restoration damages, those damages will be placed in a trust for the express purpose of effectuating the Property Owners' restoration plan. Indeed, any restoration will be performed by the Property Owners themselves and will not seek to force the EPA to do, or refrain from doing, anything at the Site.

¶18 The Dissent contends that § 113(h) requires rejecting claims that challenge EPA's *ongoing* remedial action. Dissent, ¶ 43. What, if any, actual remedial action remains ongoing is, at least, unclear. Even assuming there is something that would constitute ongoing remedial action, however, this still does not morph the Property Owners' claim for restoration damages—for purposes of funding an eventual restoration according to the Property Owners' plan—into a challenge to EPA's cleanup. As Justice Baker notes in her concurrence, the United States' counsel acknowledged during oral argument that some aspects of the Property Owners' restoration plan would not constitute a "challenge" within the meaning of the law. Concurrence, ¶ 32. As to other aspects of the Property Owners' restoration plan, even the federal government has to pull up stakes at some point and leave these private property owners alone to attend to their own private property. If the Property Owners must wait for that eventuality to conclude their restoration plan, the history of this case amply demonstrates that they have the patience for it.

¶19 Whether or not the Property Owners succeed on their claim for restoration damages will not affect, alter, or delay EPA's work in any fashion. Likewise, EPA's work, whether

13

ongoing or not, has no bearing on the success or failure of the Property Owners' claim for restoration damages on the merits. In *Sunburst*, we noted "that CECRA's focus on cost effectiveness and limits on health-based standards differ from the factors to be considered in assessing damages under the common law." *Sunburst*, ¶ 59. The same reasoning applies here: CERCLA's regulatory standards do not apply to the common law claim at issue. The District Court has already recognized this fact when it granted the Property Owners' motion in limine to preclude ARCO from presenting evidence regarding its compliance with EPA requirements, and correctly noted that allowing such evidence at trial "pose[d] the clear risk for ARCO to 'cloak itself' in the authority of the federal government." *See Sunburst*, ¶¶ 107, 121 (discussing Texaco's efforts to cloak itself in the authority of the State of Montana in order to create confusion). That being noted, nothing in our holding here should be construed as precluding ARCO from contesting the Property Owners' restoration damages claim on its own merits, just as it may contest the Property Owners' other claims.

¶20    The Property Owners' claim for restoration damages in this case arises solely under state common law, and does not implicate federal law or cleanup standards. The Property Owners are not seeking to compel EPA to do, or refrain from doing, any action. Therefore, the Property Owners' claim does not implicate § 113(h), nor does it implicate § 113(b). *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1455 (6th Cir. 1991) ("Clearly preserved [by § 113(h)], are challenges to the selection or adequacy of remedies based on state nuisance law . . . independent of federal response action.").

14

¶21 *Issue Two: Whether the Property Owners are "Potentially Responsible Parties," and thus cannot proceed with their chosen restoration activities without EPA approval.*

¶22 ARCO argues that under 42 U.S.C. § 9622(e)(6) ("CERCLA § 122(e)(6)"), the Property Owners are "Potentially Responsible Parties" ("PRP"), and are thus prohibited from conducting any remedial action that is inconsistent with EPA's selected remedy without EPA's consent. There are several categories of PRPs. For purposes of our analysis, however, the only relevant category is a class consisting of all current owners of property at a CERCLA facility. 42 U.S.C. § 9607(a)(1).

¶23 Designation as a PRP may occur in one of three ways: (1) if the party has entered into a voluntary settlement with the EPA; (2) upon a judicial determination that the party is a responsible party; or (3) if the party is currently a defendant in a CERCLA lawsuit and has been found not to be entitled to statutory defenses. *Taylor Farm*, 234 F. Supp. 2d at 966–71 (citing *Pneumo Abex Corp. v. High Point, Thomasville and Denton R. Co.*, 142 F.3d 769, 773, n.2 (4th Cir. 1998) and *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1120, n.2 (3d Cir. 1997)). The statutory defenses relevant to the Property Owners are the "innocent landowner" defense and the "contiguous landowner" defense. 42 U.S.C. § 9607(b)(3), (q).

¶24 ARCO argues that a PRP is a strictly defined category, subject to liability even if the PRP did not cause or contribute to the contamination. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956–57 (9th Cir. 2013). ARCO also contends that even if the Property Owners were able to avail themselves of a defense to liability for cleanup costs, they would still meet the broader definition of PRP, and be bound by § 122(e)(6).

Essentially, ARCO asks us to treat the Property Owners as PRPs under § 122(e)(6), even though they have never been treated as PRPs for any purpose—by either EPA or ARCO—during the entire thirty-plus years since the Property Owners' property was designated as being within the Superfund site. As the Property Owners correctly point out, the statute of limitations for such a claim (at most six years from the date cleanup work was initiated) has long passed. *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 128 (2d Cir. 2010). Put simply, the PRP horse left the barn decades ago.

¶25 The Property Owners have never entered into a voluntary settlement with the EPA. There has never been a judicial determination that the Property Owners are responsible parties. The Property Owners are not currently, nor have they ever been, defendants in a CERCLA lawsuit in which they were found not to be entitled to statutory defenses. The EPA has not included the Property Owners as a defendant in the legal proceedings in this matter, nor have they been party to any settlement agreements regarding cleanup proceedings. Despite the EPA never engaging the Property Owners as PRPs, ARCO now asks us to treat the Property Owners as PRPs—for the first time in these proceedings—solely for the purpose of using § 122(e)(6) to bar their claim for restoration damages. We decline to do so.

¶26 *Issue Three: Whether the Property Owners' claim otherwise conflicts with CERCLA, and is thus preempted.*

¶27 ARCO's final argument is that other conflicts exist between CERCLA and the Property Owners' claim for restoration damages. ARCO proffers three lines of reasoning for this argument. First, ARCO argues that the EPA has sole authority to select

16

environmental remedies at Superfund sites, which would preclude alternative standards and remedies. To adopt this reasoning would be to ignore CERCLA's savings clauses. As stated above, CERCLA's savings clauses expressly contemplate the applicability of state law remedies. 42 U.S.C. §§ 9614(a), 9652(d). Second, ARCO contends there is an "unambiguous congressional intent to foreclose any state law remedy that challenges or obstructs EPA's remedy at a Superfund site." This argument fails for the same reason that § 113(h) does not apply: the Property Owners' claim does not prevent the EPA from accomplishing its goals at the ARCO Site. Lastly, ARCO again characterizes the Property Owners' claim as a challenge to EPA's selected remedy, and argues that the claim cannot proceed until EPA's remedy is fully performed. Yet CERCLA's savings clauses operate to preserve the Property Owners' ability to pursue this claim. 42 U.S.C. § 9652(d) ("*Nothing* in [CERCLA] shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, *including common law*, with respect to releases of hazardous substances or other pollutants or contaminants." (emphasis added)). CERCLA does not expressly or impliedly preempt the Property Owners' claim for restoration damages in this matter.

## CONCLUSION

¶28 We conclude that the District Court did not err by Denying ARCO's Motion for Summary Judgment on Property Owners' Claim for Restoration Damages as Barred by CERCLA and Granting Property Owners' Motion for Summary Judgment on ARCO's CERCLA Preemption Affirmative Defenses (11th–13th). To be clear, ARCO is not

17

precluded from contesting the merits of the Property Owners' restoration plans. However, that is an issue of fact to be resolved at trial.

¶29 THEREFORE, IT IS ORDERED:

¶30 The District Court's order Denying ARCO's Motion for Summary Judgment on Property Owners' Claim for Restoration Damages as Barred by CERCLA and Granting Property Owners' Motion for Summary Judgment on ARCO's CERCLA Preemption Affirmative Defenses (11th–13th) is AFFIRMED. This matter is remanded to the District Court for further proceedings consistent with this Opinion.

DATED this 29th day of December, 2017.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ JAMES MANLEY
Sitting for Chief Justice Mike McGrath
/S/ JOHN KUTZMAN
Sitting for Justice Jim Rice
/S/ MICHAEL E WHEAT
/S/ DIRK M. SANDEFUR

Justice Beth Baker, specially concurring.

¶31 I understand the Court's decision today to be a narrow one: CERCLA does not, as a matter of law, preempt all common-law claims for restoration damages to the property of a private individual. I agree with that conclusion and with the decision not to treat the Property Owners as PRPs. I thus concur with the Court's ruling that the District Court did not err in denying ARCO's motion for summary judgment on the restoration damages

18

claims. I appreciate the Dissent's thorough analysis of CERCLA § 113(h), but do not agree that it applies to foreclose the Property Owners' claims.

¶32 It became clear during oral argument in this case that the parties dispute whether aspects of the Property Owners' proposed restoration plan would conflict with actions ARCO has taken in the Superfund cleanup effort. ARCO's counsel characterized the dispute as one of jurisdiction, which empowers the trial court to determine underlying facts. Here, the trial court determined, for conflict preemption purposes, that the Property Owners' claims did not stand as an obstacle to the CERCLA cleanup underway or impede EPA's requirements on the site. Amicus curiae the United States argues that the purpose of CERCLA is to assure that EPA coordinates the cleanup between multiple stakeholders, so that the selected plan may move forward without obstruction, delay, or the diversion of resources that would accompany multiple individual plans and proposals. The government stresses that state-court lawsuits cannot, under § 113(h), supplement EPA's selected response-action cleanup levels if such a proposed plan challenges or conflicts with EPA's proposed remedy. The government recognizes, though, that CERCLA does not bar all state-law claims by affected landowners, and its counsel acknowledged during oral argument that some aspects of the Property Owners' plan would not be a "challenge" within the meaning of the law. The Property Owners' counsel protested during argument that it was the first time they had heard that some aspects of their plan would "undo" what already has been done, and that in nine years of litigation no evidence had been presented to the District Court that the Property Owners' plan conflicted with EPA's remedy.

19

¶33 The large-scale environmental remediation projects made possible by CERCLA are intended, and are essential, to clean up severe widespread contamination resulting from decades of historic mining practices that left expansive deposits of toxic tailings and particulate fallout in floodplains, ranchlands, and soils. The massive cleanup efforts in which ARCO, EPA, and the State of Montana have engaged for more than thirty years have gone far to remediate the Superfund site. But CERLCA draws a distinction between remedial action and damages for injury to, destruction of, or loss of natural resources. 42 U.S.C. § 9607(a)(4)(A), (C). Outside of the remediation process, States may pursue recovery of damages on behalf of the public as trustee of the state's natural resources to "*restore*, replace, or acquire the equivalent of such natural resources by the State." 42 U.S.C. § 9607(f)(1) (emphasis added). "CERCLA sets a floor, not a ceiling." *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1246 (10th Cir. 2006). And CERCLA does not cover damages to "purely private property." *Ohio v. U.S. Dep't of the Interior*, 880 F.2d 432, 460 (D.C. Cir. 1989). It does not force local residents simply to live with the impacts if they can prove, through their nuisance and trespass actions, that state law entitles them to damages for the restoration of their own land. As the Court observes, consistent with our parallel conclusion in *Sunburst*, CERCLA's "focus on cost effectiveness and limits on health-based standards differ from the factors to be considered in assessing damages under the common law." Opinion, ¶ 19 (quoting *Sunburst*, ¶ 59). The dynamic between individual restoration and CERCLA's coordinated large-scale response does not give rise to preemption as a matter of law. "Tension between federal and state law is not enough to establish conflict preemption. We find preemption only in those situations where conflicts

20

will necessarily arise. A hypothetical conflict is not a sufficient basis for preemption." *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1010 (9th Cir. 2007) (internal citations and quotations omitted).

¶34 In our limited Order accepting supervisory control in this case, we did not agree to review the District Court's orders in limine. But the Court observes that ARCO is not precluded at trial from contesting the merits of the Property Owners' restoration plans. Opinion, ¶¶ 19, 28. A claim for restoration damages requires the Property Owners to prove two separate elements: (1) temporary injury and (2) reasons personal for the restoration. *Lampi*, ¶ 29 (quoting *Sunburst*, ¶¶ 31-39). An injury is temporary "if the tortfeasor could restore the destroyed property to substantially the condition in which it existed before the injury. An injury that would cease to exist once remediation or restoration has been completed qualifies as temporary." *Lampi*, ¶ 32 (internal citations omitted). For temporary injury, the ability to repair the injury "must be more than a theoretical possibility." *Sunburst*, ¶ 31 (citing *Burk Ranches v. State*, 242 Mont. 300, 306, 790 P.2d 443, 447 (1990)).

¶35 The "reasons personal" element requires the Property Owners "to establish that the award actually will be used for restoration." *Lampi*, ¶ 31. The "personal reasons" analysis is required only when the restoration costs "exceed disproportionately" the diminution in value of the property. *McEwen v. MCR, LLC*, 2012 MT 319, ¶ 30, 368 Mont. 38, 291 P.3d 1253; *Sunburst*, ¶ 38. Finally, an "injured party is to be made as nearly whole as possible—but not to realize a profit. Compensatory damages are designed to compensate the injured

21

party for actual loss or injury—no more, no less." *Sunburst*, ¶ *40 (quoting Burk Ranches*, 242 Mont. at 307, 790 P.2d at 447).

¶36 "[T]hese issues normally present factual questions for the jury to resolve." *Lampi*, ¶ 48. The Court acknowledges the District Court's concern about allowing ARCO to "'cloak itself' in the authority of the federal government." Opinion, ¶ 19. I write separately to add that if ARCO contends that the Property Owners' proposed remedy conflicts with or requires modification of measures ARCO already has taken to clean up the site, ARCO must be able to address those conflicts in seeking to rebut the Property Owners' claim on the essential elements of proof under our standards for a restoration damages claim. What ARCO may not do at trial is point to the EPA's selected remedy and say, "We've done everything the government required; that's all we need to do." What ARCO may do is offer evidence to support its claim that the Property Owners' proposed restoration plan is not feasible and thus does not qualify as a temporary injury. And the Property Owners should have the opportunity to prove their claim that ARCO's cleanup efforts to date have not returned their properties to substantially the same condition in which they were before the injury, but that the injury will cease to exist if their proposed restoration plan is implemented. The Property Owners' proposals should be considered by the jury in the context of determining whether ARCO is liable for their alleged injuries and whether those injuries are compensable by an award of restoration damages. Evidence on the issue of temporary injury may well overlap with the evidence required to show, pursuant to our holding in *Atlantic Richfield Co.*, ¶ 77, whether the continuing tort doctrine tolled the period of limitations for the Property Owners' claims. It makes sense to allow

the parties to develop the evidence for the jury's consideration of these issues and a record that may be reviewed, if necessary, on appeal from any final judgment.

/S/ BETH BAKER

Justice Laurie McKinnon, dissenting.

¶37 Property Owners seek monetary damages for state law claims of nuisance, trespass, and strict liability. ARCO does not contest that litigation of these state law claims may proceed during the pendency of the CERCLA cleanup process and, accordingly, that issue is not before the Court. ARCO does contend that Property Owners' claim for restoration damages proposes a different cleanup plan than that chosen by the EPA, thus constituting a challenge which is preempted by CERCLA. In my view, Property Owners' restoration plan, which includes digging an 8,000-foot trench for a groundwater wall and removing 650,000 tons of soil over a period of years, would conflict with the ongoing EPA investigation and CERCLA cleanup.[1] The Court's conclusion that, during the pendency of a CERCLA cleanup effort, a jury may determine restoration damages and place the amount of money so determined in a trust for future restoration efforts, Opinion, ¶ 17, is not only

_____

[1] To recover restoration damages under Montana law, the plaintiff must present evidence and convince the fact-finder that he will actually conduct the restoration upon which the restoration claim is based. *Lampi*, ¶ 31 ("The reasons personal rule requires plaintiff to establish that the award actually will be used for restoration . . . ."); *Sunburst*, ¶ 43; *McEwen*, ¶ 50. It is the actual performance of Property Owners' restoration plan—a prerequisite to their damage award—that impermissibly challenges the EPA's remedy. For purposes of brevity, I do not address other provisions of CERCLA which ARCO asserts would bar Property Owners from completing their restoration plan.

inconsistent with CERCLA and federal precedent, but has no authority in Montana law.[2] Property Owners may not "achieve indirectly through the threat of monetary damages . . . what [they] cannot obtain directly through mandatory injunctive relief incompatible with the ongoing CERCLA-mandated remediation." *New Mexico*, 467 F.3d at 1250. Moreover, "[d]amages must be proven by substantial evidence which is not the product of mere guess or speculation." *Sebena v. Am. Auto. Ass'n*, 280 Mont. 305, 309, 930 P.2d 51, 53 (1996). "[W]here no costs have been incurred, and no costs are reasonably certain to be incurred in the future, the plaintiff has not stated a claim for damages," and summary judgment should be granted. *Town of Superior v. Asarco, Inc.*, 874 F. Supp. 2d 937, 949 (D. Mont. 2004). *See also B.M. v. State*, 215 Mont. 175, 179, 698 P.2d 399, 401 (1985) ("Where plaintiff presents evidence of damages which are purely speculative, summary judgment is appropriate."). Here, there is no genuine issue of material fact that Property Owners' claim for restoration damages is a challenge to the EPA's remedial action and prohibited by CERCLA as a matter of law.

¶38 CERCLA is a "comprehensive statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." *Key Tronic Corp. v. United States*, 511 U.S. 809, 814, 114 S. Ct. 1960, 1964 (1994).[3]

---

[2] The Court errs when it applies the *Sunburst* analysis to the instant proceedings. In *Sunburst*, there was no question that Montana state courts had subject-matter jurisdiction over CERCLA and common law claims. Here, however, CERCLA-related activities are the exclusive, original jurisdiction of the federal courts and a challenge in state court to the chosen EPA remedy implicates the Supremacy Clause of the United States Constitution.

[3] CERCLA vests authority in the President, who, in turn, has delegated most of his functions and authority to the EPA. *See* 42 U.S.C. §§ 9606(c), 9615; 40 C.F.R. § 300.100.

"CERCLA is best known as setting forth a comprehensive mechanism to cleanup hazardous waste sites under a *restoration-based* approach." *New Mexico*, 467 F.3d at 1244 (citation omitted; emphasis added). CERCLA was intended to "promote the timely cleanup of hazardous waste sites, ensure that polluters were held responsible for the cleanup efforts, and encourage settlement through specified contribution protection." *Chubb*, 710 F.3d at 956. "One of the core purposes of CERCLA is to foster settlement through its system of incentives and without unnecessarily further complicating already complicated litigation." *Cal. Dep't of Toxic Substances Control v. City of Chico*, 297 F. Supp. 2d 1227, 1235 (E.D. Cal. 2004). *See also In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 119 (2d Cir. 1992) ("Congress sought through CERCLA . . . to encourage settlements that would reduce the inefficient expenditure of public funds on lengthy litigation."); *City of Emeryville v. Robinson*, 621 F.3d 1251, 1264 (9th Cir. 2010) (noting that CERCLA was designed to ensure, *inter alia*, "that settlements are encouraged through specified contribution protection"); 42 U.S.C. § 9622. Under CERCLA § 113(f)(2), "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2).

¶39    There are two types of cleanup actions under CERCLA: remedial actions and removal actions. Remedial actions generally are "long-term or permanent containment or disposal programs" while removal actions are "typically short-term cleanup arrangements." *Schaefer v. Town of Victor*, 457 F.3d 188, 195 (2d Cir. 2006) (citation and quotation omitted). CERCLA defines "remedial action" as:

[T]hose actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, *to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment.* The term includes, *but is not limited to*, such actions at the location of the release as storage, *confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials*, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, *collection of leachate and runoff,* onsite treatment or incineration, provision of alternative water supplies, *and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment.* The term includes the costs of permanent relocation of residents and businesses and community facilities where the President determines that, alone or in combination with other measures, such relocation is more cost-effective than and environmentally preferable to the transportation, storage, treatment, destruction, or secure disposition offsite of hazardous substances, or may otherwise be necessary to protect public health or welfare; the term includes offsite transport and offsite storage, treatment, destruction, or secure disposition of hazardous substances and associated contaminated materials.

42 U.S.C. § 9601(24) (emphasis added).

¶40    CERCLA defines "remove" or "removal" as:

[T]he cleanup or removal of released hazardous substances from the environment, such actions as may be necessary . . . to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for . . . .

42 U.S.C. § 9601(23).

¶41    CERCLA-related activities may qualify as removal or remedial actions in at least three ways. *Hanford Downwinders Coal. v. Dowdle*, 71 F.3d 1469, 1474 (9th Cir. 1995).

26

First, the action may be specifically designated as removal or remedial activity. *Hanford Downwinders*, 71 F.3d at 1474. Second, cleanup activity explicitly classified in CERCLA as a "response" is, by definition, a removal or remedial action. *See* 42 U.S.C. § 9601(25) (defining "response" as a "removal" or "remedial action"). Finally, "even if action taken at a CERCLA site is not referred to in the statute as a removal or remedial action or a response action, the Timing of Review provision will still apply if the action satisfies CERCLA's definition of 'removal' or 'remedial.'" *Hanford Downwinders*, 71 F.3d at 1474.

¶42    CERCLA provides that "the United States district courts shall have exclusive original jurisdiction over all controversies arising under [CERCLA]." 42 U.S.C. § 9613(b). Section 113(h) of CERCLA, titled "Timing of review," provides an exception to federal jurisdiction during the pendency of a CERCLA removal or remedial action: "No Federal court shall have jurisdiction under Federal law . . . or under State law . . . to review any challenges to removal or remedial action . . . ." 42 U.S.C. § 9613(h). Section 113(h) clearly and unequivocally precludes contemporaneous challenges to CERCLA cleanups, regardless of whether the challenge is made pursuant to federal or state law. Section 113(h) amounts to a "blunt withdrawal of federal jurisdiction" and precludes any challenge to CERCLA cleanups. *N. Shore Gas Co. v. EPA*, 930 F.2d 1239, 1244 (7th Cir. 1991); *accord Broward Gardens Tenants Ass'n v. EPA*, 311 F.3d 1066, 1075 (11th Cir. 2002). "Section 113 withholds federal jurisdiction to review any . . . claims, including those made in citizen suits and under non-CERCLA statutes, that are found to constitute 'challenges' to ongoing CERCLA cleanup actions." *MESS*, 47 F.3d at 329. Read in conjunction, § 113(b) and (h)

divest state courts of jurisdiction to review any state law claim which amounts to a challenge of a CERCLA removal or remedial action. *Fort Ord Toxics Project v. Cal. EPA*, 189 F.3d 828, 832 (9th Cir. 1999). In *Fort Ord Toxics Project*, the Ninth Circuit observed that "by granting district courts exclusive jurisdiction over all controversies arising under CERCLA, Congress used language more expansive than would be necessary if it intended to limit exclusive jurisdiction solely to those claims created by CERCLA." *Fort Ord*, 189 F.3d at 832 (internal quotations and citations omitted).

¶43     The Ninth Circuit explained, "Congress concluded that the need for [swift execution of CERCLA cleanup plans] was paramount, and that peripheral disputes, including those over what measures actually are necessary to clean-up the site and remove the hazard, may not be brought while the cleanup is in progress." *MESS*, 47 F.3d at 329 (internal quotations and citations omitted). Accordingly, § 113(h) "protects the execution of a CERCLA plan *during its pendency* from lawsuits that might interfere with the expeditious cleanup effort. This result furthers the policy underlying CERCLA by allowing a quick response to serious hazards." *MESS*, 47 F.3d at 329 (emphasis in original). The court explained in *MESS*:

> We recognize that the application of Section 113(h) may in some cases delay judicial review for years, if not permanently, and may result in irreparable harm to other important interests. Whatever its likelihood, such a possibility is for legislators, and not judges, to address. We must presume that Congress has already balanced all concerns and concluded that the interest in removing the hazard of toxic waste from Superfund sites clearly outweighs the risk of irreparable harm.

*MESS*, 47 F.3d at 329 (internal quotations, citations, and footnote omitted). In *MESS*, the court was careful to explain that it was not deciding "whether or to what extent the district court can entertain MESS's various claims after implementation of the CERCLA cleanup

at McClellan is complete." *MESS*, 47 F.3d at 329, n.6. Accordingly, § 113(h) bars *any* claim that challenges an ongoing CERCLA cleanup effort. Further, the language of § 113(h) does not distinguish between federal and state claims or constitutional and statutory claims; instead, it delays judicial review of *any* challenges to unfinished remedial EPA efforts. *See Broward Gardens*, 311 F.3d at 1075.

¶44 The Ninth Circuit has provided clear guidance concerning what constitutes a "challenge" to a CERCLA cleanup effort. In *Razore v. Tulalip Tribes*, the court explained that "[a]n action constitutes a challenge if it is *related to the goals of the cleanup*." 66 F.3d 236, 239 (9th Cir. 1995) (emphasis added). Challenges to CERCLA cleanups were found where the plaintiff seeks to dictate specific remedial actions, *Hanford Downwinders*, 71 F.3d at 1482; to postpone cleanup, *Fort Ord*, 189 F.3d at 831; to impose additional reporting requirements on the cleanup, *MESS*, 47 F.3d at 330; and to terminate the Remedial Investigation/Feasibility Study (RI/FS) and alter the method and order of cleanup, *Razore*, 66 F.3d at 239. Consistent with the Ninth Circuit, the Tenth Circuit has held that a state claim is preempted by CERCLA if the "claim, or any portion thereof, stands as an obstacle to the accomplishment of congressional objectives as encompassed in CERCLA." *New Mexico*, 467 F.3d at 1244. The Eleventh Circuit similarly explained that "[t]o determine whether a suit interferes with, and thus challenges, a cleanup, courts look to see if the relief requested will impact the remedial action selected." *Broward Gardens*, 311 F.3d at 1072. The Eighth Circuit held that a suit challenges a remedial action within the meaning of § 113(h) if it interferes with the implementation of a CERCLA remedy. *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 675 (8th Cir. 1998).

29

¶45 The Ninth Circuit has also distinguished when a claim does not constitute a challenge to a CERCLA cleanup effort. In *Beck v. Atlantic Richfield Co.*, 62 F.3d 1240, 1243 (9th Cir. 1995), the court held that a state law claim by water users seeking financial compensation for lost crops and profits resulting from the EPA's diversion of water was not a challenge to the CERCLA cleanup plan; however, the water users' claim for injunctive relief to prevent ARCO from diverting the water was a challenge to the EPA cleanup. In *ARCO Environmental Remediation*, 213 F.3d at 1113, a state law claim for access to public records and meetings did not relate to the goals of the EPA's cleanup and therefore did not constitute a challenge divesting the court of jurisdiction to entertain the claim. The lawsuit did not alter cleanup requirements or environmental standards and did not seek to delay or terminate the cleanup. Instead, the lawsuit involved the public's right to information about the cleanup. *ARCO Envtl. Remediation*, 213 F.3d at 1115.

¶46 CERCLA does not completely occupy the field of environmental regulation. Congress expressly declared that it had no intent for CERCLA to do so by enacting two savings clauses within CERCLA upon which Property Owners rely. The first savings clause, 42 U.S.C. § 9614(a), provides: "Nothing in this Act shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State." The second, 42 U.S.C. § 9652(d) provides: "Nothing in this Act shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants." Furthermore, Congress recognized the role of state law in hazardous waste cleanup when

it addressed the overlap of CERCLA and state law in 42 U.S.C. § 9614(b), which provides, in relevant part, that "[a]ny person who receives compensation for removal costs or damages or claims pursuant to any other Federal or State law shall be precluded from receiving compensation for the same removal costs or damages or claims as provided in this Act." Congress clearly expressed "its intent that CERCLA should work in conjunction with other federal and state hazardous waste laws in order to solve this country's hazardous waste cleanup problem." *United States v. Colorado*, 990 F.2d 1565, 1575 (10th Cir. 1993); *accord Manor Care, Inc. v. Yaskin*, 950 F.2d 122, 125-26 (3d Cir. 1991). The Ninth Circuit also explained that "Congress did not want § 113(h) to serve as a shield against litigation that is unrelated to disputes over environmental standards." *Fort Ord*, 189 F.3d at 831.[4]

¶47    While a principle purpose of CERCLA's savings clauses is to reinforce the right to demand hazardous waste cleanup apart from CERCLA, a savings clause "is not intended to allow specific provisions of the statute that contains it to be nullified." *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 618 (7th Cir. 1998). *See also Wyoming v. United States*, 279 F.3d 1214, 1234 (10th Cir. 2002) (quoting *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 864, 120 S. Ct. 1913, 1916 (2000), for the proposition that "[t]he Supreme Court has 'repeatedly declined to give broad effect to savings clauses where doing so would upset the careful regulatory scheme established by federal law'"). "CERCLA's savings clause must not be used to gut provisions of CERCLA." *PMC*, 151 F.3d at 618. Moreover,

---

[4] For examples of state courts dismissing state law claims under § 113(h) of CERCLA, *see O'Neal v. Department of the Army*, 742 A.2d 1095, 1100 (Pa. Super. Ct. 1999), and *Aztec Minerals Corp. v. Romer*, 940 P.2d 1025, 1032-33 (Colo. Ct. App. 1996).

CERCLA does not establish a "new font of law on which private parties could base claims for personal and property injuries." *Artesian Water Co. v. Gov't of New Castle Cnty.*, 659 F. Supp. 1269, 1286 (D. Del. 1987), *aff'd*, 851 F.2d 643 (3d Cir. 1988) (internal quotations and citations omitted). The purpose of a savings clause "is merely to nix an inference that the statute in which it appears is intended to be the exclusive remedy for harms caused by the violation of the statute." *PMC*, 151 F.3d at 618. Thus, CERCLA's savings clause was enacted because Congress did not want to "wipe out people's rights inadvertently, with the possible consequence of making the intended beneficiaries of the legislation worse off than before it was enacted. The passage of federal environmental laws was not intended to wipe out the common law of nuisance." *PMC*, 151 F.3d at 618.

¶48     Any state law claim raised pursuant to CERCLA's savings clause which challenges the remediation efforts of the EPA must wait until after the response actions are completed because CERCLA "protects the execution of a CERCLA plan *during its pendency* from lawsuits that might interfere with the expeditious cleanup effort." *New Mexico*, 467 F.3d at 1249 (quoting *MESS*, 47 F.3d at 329) (emphasis in original). When the EPA selects a remedy, no challenge to the cleanup may occur prior to completion of the remedy. This is true even if the claim is made pursuant to state law and attempts to invoke the state court's jurisdiction through CERCLA's savings clause. Federal courts have exclusive and original jurisdiction over any CERCLA-related activity. As explained in *Fort Ord*, 189 F.3d at 831, Congress made federal subject-matter jurisdiction broad, enacting a bar to jurisdiction through the provisions of § 113(h) during the pendency of a CERCLA cleanup effort. *See also Cannon v. Gates*, 538 F.3d 1328, 1336 (10th Cir. 2008). Accordingly, if the state

32

claims call "into question the EPA's remedial response plan, it is related to the goals of the cleanup, and thus constitutes a 'challenge' to the cleanup under [§ 113(h)]." *New Mexico*, 467 F.3d at 1249.

¶49 Neither a federal court considering CERCLA-related activity nor a state court considering a state claim pursuant to CERCLA's savings clause has subject-matter jurisdiction to consider the claim when the claim constitutes a challenge to CERCLA's cleanup effort. It makes little difference that the claim originated in state court when the relief sought constitutes a challenge. In *New Mexico*, 467 F.3d at 1252, the Tenth Circuit dismissed state claims of public nuisance and negligence for lack of subject-matter jurisdiction under § 113(h). In *Cannon*, 538 F.3d at 1334-36, the Tenth Circuit affirmed the trial court's dismissal of landowners' claims under the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-81, concluding that § 113(h) stripped subject-matter jurisdiction from the trial court to consider the claims. In *Broward Gardens*, 311 F.3d at 1076, the Eleventh Circuit affirmed the trial court's dismissal of landowners' claims because the court lacked subject-matter jurisdiction over the case because of § 113(h). In *Hanford Downwinders*, 71 F.3d at 1484, the Ninth Circuit affirmed the district court's dismissal of claims for lack of subject-matter jurisdiction and for failure to state a claim because of § 113(h). Given the substantial weight of authority which establishes the matter as being one of subject-matter jurisdiction, I am at a loss to understand how this Court can suggest, without any authority, that we "simply" allow "a jury of twelve Montanans" to "assess the merits of [the Property Owners' restoration] plan" and then instruct any resulting damages "be placed in a trust for the express purpose of effectuating the Property Owners' restoration

33

plan." Opinion, ¶ 17. Most respectfully, the Property Owners should not be permitted to proceed to a jury trial when the District Court clearly lacks subject-matter jurisdiction over the controversy. Indeed, any order denying ARCO's motion would be reviewable as an interlocutory order pursuant to M. R. App. P. 6(3)(c).

¶50 Property Owners seek monetary damages for: (1) "Injury to and loss of use and enjoyment of real and personal property"; (2) "Loss of the value of real property . . . "; (3) "Incidental and consequential damages, including relocation expenses and loss of rental income and/or value"; (4) "Annoyance, inconvenience, and discomfort over the loss and prospective loss of property value . . . "; and (5) "Expenses for and cost of investigation and restoration of real property" pursuant to Property Owners' restoration plan. ARCO does not dispute that Property Owners may proceed on the first four types of damages, which are being made pursuant to nuisance, trespass and strict liability.[5] ARCO does dispute that Property Owners may proceed on the fifth type of damage, contending that the District Court lacks subject-matter jurisdiction because of the ongoing CERCLA cleanup effort and the provisions of § 113(h). Accordingly, pursuant to the aforementioned authority, the District Court's grant of summary judgment to Property Owners on their claim for restoration damages must be reversed if Property Owners' restoration plan constitutes a challenge to the CERCLA cleanup effort at the Smelter Site. If Property Owners' proposed restoration plan "relate[s] to the goals of the cleanup," *Razore*, 66 F.3d

---

[5] Given the requirement that damages not be speculative, remote or conjectural, *Sebena*, 280 Mont. at 309, 930 P.2d at 53, it is difficult to comprehend how damages can be calculated prior to completion of CERCLA remedial efforts for those areas of compensation ARCO does not contest. *See New Mexico*, 467 F.3d at 1250. That issue, however, is not before the Court.

at 239, it constitutes a challenge to the CERCLA cleanup effort and the District Court is divested of jurisdiction.

¶51 Property Owners assert claims based on contamination to properties located within the legally defined boundaries of a federal Superfund site. The EPA issued its first administrative order to ARCO in 1984, which required ARCO to perform a site-wide RI/FS. Following completion of the study in 1987, the EPA divided the Smelter Site into five major sections called Operable Units, each relating to different cleanup remedies. Property Owners seek to restore land contained within several of these sections. The EPA continues its cleanup efforts in the designated area consistent with its selected remedies. The EPA estimates that active remediation of the Smelter Site will not be completed until 2025. ARCO filed affidavits and reports from its expert, Richard E. Bartlett, supporting its position that cleanup is ongoing and that as recently as 2016 residential soils and pasture were being cleaned to remove arsenic. ARCO also filed an Administrative Order on Consent, entered pursuant to CERCLA, that set forth how the cleanup effort was to proceed. As a result of monitoring and reexamination, the EPA has made amendments to its cleanup plan, primarily to incorporate the federal drinking water standard for arsenic from 18 ppb to 10 ppb. The EPA also added the action level for lead in 2013. The EPA asserts that it continues to monitor, modify, and reexamine remedies since the remedial plan was first implemented, which may result in additional amendments. Once the EPA remedy is completed on the Property Owners' land, the soil will be capped or backfilled with clean soil, vegetation, or other protective barrier. ARCO and the EPA maintain that tearing up the protective cap or layer of soil could increase dust transfer, bioavailability of

35

lead, and soil ingestion—all of which were concerns addressed by the EPA when it initially designed the cleanup plan. ARCO has filed affidavits and expert reports in support of its position. ARCO, the State, and local governments are currently negotiating a final site-wide consent decree that will encompass all remaining remedies and cleanup work to be conducted at the Smelter Site.

¶52 Property Owners propose a different cleanup or restoration plan. Property Owners do not dispute that their properties are located within the boundaries of the Superfund site. Nor do Property Owners dispute that they seek "full restoration" of their property, which is different from that selected by the EPA. Although Property Owners and this Court conclude, without any analysis, that Property Owners are not seeking to "stop, delay, or change the work EPA is doing," Opinion, ¶ 15, the Property Owners' plan is plainly contrary to the EPA's remediation plan. *See, e.g., New Mexico*, 467 F.3d at 1249-50; *MESS*, 47 F.3d at 329. Property Owners' experts, Richard Plaus and John Kane, advocate a lower level of arsenic in the soil than that proposed by the EPA. Property Owners propose excavating the soil to a deeper level and suggest the excavated soil be transported to Spokane, rather than local depositories. Property Owners also propose that a series of underground trenches and barriers be constructed to capture and treat shallow groundwater. The reactive barriers proposed by Property Owners would be 8,000 feet long, 15 feet deep, 3 feet wide, and situated upgradient of the town. The barriers would contain enzymes designed to remove arsenic in the water, which the EPA maintains could unintentionally contaminate both ground and surface water.

36

¶53 A district court must determine whether the complaint states facts that, if true, would vest the court with subject-matter jurisdiction. *Meagher v. Butte-Silver Bow City-County*, 2007 MT 129, ¶ 13, 337 Mont. 339, 160 P.3d 552. Summary judgment should be granted "'if the pleadings, depositions, answers to interrogatories, and admissions on file,' together with any affidavits demonstrate that no genuine issue exists as to any material fact and that the party moving for summary judgment is entitled to judgment as a matter of law." *Stipe v. First Interstate Bank-Polson*, 2008 MT 239, ¶ 10, 344 Mont. 435, 188 P.3d 1063 (quoting M. R. Civ. P. 56(c)). A defending party may be entitled to summary judgment on a certain type or category of damages. *See Corporate Air v. Edwards Jet Ctr. Mont., Inc.*, 2008 MT 283, ¶ 54, 345 Mont. 336, 190 P.3d 1111. Here, at the risk of stating the obvious, Property Owners request in their Third Amended Complaint "full restoration" of their properties while a restoration-based remedial plan selected by the EPA is being implemented. In addition, the affidavits and reports of each party's expert witnesses establish as a matter of law that Property Owners' claim for restoration damages challenges the EPA's selected remedial action and that the cleanup is still ongoing. Indeed, the undisputed evidence shows the EPA rejected the soil and groundwater remedies proposed by Property Owners during the course of the EPA's regulatory deliberations at the Smelter Site. In my opinion, the District Court erred, as a matter of law, in concluding that Property Owners' claim for restoration damages did not constitute a challenge to the remedial action plan chosen by the EPA.

¶54 I dissent from the Court's conclusion that Property Owners' claim for restoration damages is not barred pursuant to the provisions of § 113(h). The issue before this Court

is one of subject-matter jurisdiction which, if lacking, bars Property Owners from proceeding to trial on their claim for restoration damages. I would reverse because there is no genuine dispute of fact that Property Owners' restoration claim conflicts with the ongoing EPA investigation and CERCLA cleanup.6 The District Court, as a matter of federal law, lacks subject-matter jurisdiction to consider Property Owners' claim for restoration damages.

/S/ LAURIE McKINNON

---

6 The question of whether Property Owners' claim for restoration damages constitutes a challenge to CERCLA cleanup efforts is pivotal to resolution of many issues in this case. For example, in *New Mexico*, 467 F.3d at 1250, the Tenth Circuit, having found that CERCLA's cleanup efforts were ongoing, determined that damages for common law public nuisance and negligence must be addressed at the conclusion of the EPA-ordered remediation. "Only then will we know the effectiveness of the cleanup and the precise extent of residual damage." *New Mexico*, 467 F.3d at 1250. Accordingly, I would not address ARCO's contention, at this juncture, that Property Owners are PRPs under 42 U.S.C. § 9622(e)(6) (CERCLA § 122(e)(6)) and therefore precluded from proceeding with their chosen remedy.